# Matter of Jing WU, Respondent

*Decided April 13, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Assault with a deadly weapon or force likely to produce great bodily injury under California law is categorically a crime involving moral turpitude. *Ceron v. Holder*, 747 F.3d 773 (9th Cir. 2014) (en banc), distinguished.

FOR RESPONDENT: Lien L. Uy, Esquire, Oakland, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Deborah F. Ho, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, MULLANE, and CREPPY, Board Members.

MALPHRUS, Board Member:

In a decision dated January 16, 2015, an Immigration Judge terminated the respondent's removal proceedings. The Department of Homeland Security ("DHS") filed a motion to reconsider, which the Immigration Judge denied on July 17, 2015. The DHS has appealed from that decision. The appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of China who was admitted to the United States as a lawful permanent resident on May 2, 2008. On April 20, 2012, he was convicted of assault in violation of section 245(a)(1) of the California Penal Code. Based on this conviction, the DHS initiated removal proceedings, charging that the respondent is removable under section 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2012), as an alien who has been convicted of a crime involving moral turpitude committed within 5 years after the date of admission, for which a sentence of 1 year or longer may be imposed. The Immigration Judge determined that the respondent's conviction did not render him removable as charged and she terminated the proceedings.

On appeal, the DHS contends that because section 245(a)(1) of the California Penal Code categorically defines a crime involving moral

turpitude under the Act, the Immigration Judge improperly terminated the proceedings and denied its motion to reconsider.[1]  We review this legal question de novo.  8 C.F.R. § 1003.1(d)(3)(ii) (2016).  For the following reasons, we conclude that the respondent's assault offense in violation of section 245(a)(1) is categorically a crime involving moral turpitude.

## II.  ANALYSIS

"The term 'moral turpitude' generally refers to conduct that is 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Matter of Silva-Trevino*, 26 I&N Dec. 826, 833 (BIA 2016) (citation omitted).  "To involve moral turpitude, a crime requires two essential elements:  reprehensible conduct and a culpable mental state." *Id.* at 834.

The parties agree that at the relevant time, section 245(a)(1) of the California Penal Code punished

> [a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury.[2]

Both we and the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, long ago addressed the question whether assault with a deadly weapon under California law was a crime involving moral turpitude and concluded that it was.  *See Gonzales v. Barber*, 207 F.2d 398, 400 (9th Cir. 1953), *aff'd on other grounds*, 347 U.S. 637 (1954);

---

[1]  It is undisputed that that the respondent's offense was committed within 5 years of his date of admission and that his crime is one for which a sentence of 1 year or longer may be imposed.  *See Ceron v. Holder*, 747 F.3d 773, 777–78 (9th Cir. 2014) (en banc). Moreover, since we ultimately conclude that the respondent's conviction involves moral turpitude, we need not reach the DHS's argument that the respondent is removable under section 237(a)(2)(E)(i) of the Act as an alien convicted of a crime of domestic violence.

[2]  The portion of section 245(a)(1) pertaining to "force likely to produce great bodily injury" has since been removed from this provision and renumbered as section 245(a)(4). *See* Cal. Penal Code § 245(a) (West 2017).  The record reflects that the respondent's sentence was enhanced pursuant to section 12022.7(a) of the California Penal Code, which applies to "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony."  However, because we conclude that assault under section 245(a)(1) is categorically a crime involving moral turpitude, we need not discuss the effect, if any, that this enhancement may have on the moral turpitude inquiry.  *See generally Matter of Martinez-Zapata*, 24 I&N Dec. 424, 426 (BIA 2007) (regarding the treatment of a sentencing enhancement as an element of the underlying offense).

*Matter of G-R-*, 2 I&N Dec. 733, 740 (BIA 1946, A.G. 1947). However, the Ninth Circuit has recently explained that "[t]he development of both federal law and state law over the intervening six decades . . . has undermined the reasoning of those cases." *Ceron v. Holder*, 747 F.3d 773, 780 (9th Cir. 2014) (en banc). Specifically, the court in *Ceron* concluded that the reasoning employed in *Barber* and *Matter of G-R-* "runs counter to today's categorical analysis" as embodied in *Taylor v. United States*, 495 U.S. 575 (1990). *Id.* The court additionally stated that "[s]tate law developments, too, have undermined the reasoning of" *Barber* and *Matter of G-R-* because the Ninth Circuit and the Board did not have the benefit of *People v. Williams*, 29 P.3d 197 (Cal. 2001), which "only recently defined with precision the requisite mental state for assault" under section 245(a)(1). *Ceron*, 747 F.3d at 781.

Because we are entitled to deference with respect to whether a particular offense involves moral turpitude, the court in *Ceron* remanded that case so that we could "determine in the first instance whether California Penal Code section 245(a)(1) categorically constitutes a crime involving moral turpitude" under the framework set forth in *Taylor*. *Id.* at 785 (citing *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc)). The court additionally requested that we clarify on remand "how [to] assess [whether] a statute—like California Penal Code section 245(a)(1)—that requires knowledge of the relevant facts but does not require subjective appreciation of the ordinary consequences of those facts" involves moral turpitude. *Id.* at 784. We take the opportunity in this case to clarify our analysis in this regard and to address the issues raised in *Ceron*.

We begin our analysis by employing the categorical approach, in which we examine whether the elements defining section 245(a)(1) "fit[] within the generic definition of a crime involving moral turpitude." *Matter of Silva-Trevino*, 26 I&N Dec. at 831 (applying the framework outlined in *Taylor* in the moral turpitude context); *see also Ceron*, 747 F.3d at 778–81. The categorical approach requires us to focus on the elements defining the offense of conviction—rather than the facts underlying the respondent's particular violation—and the minimum conduct that has a "realistic probability" of being prosecuted under those elements. *See, e.g.*, *Hernandez-Gonzalez v. Holder*, 778 F.3d 793, 801 (9th Cir. 2015) (stating that a State statute does not categorically define a crime involving moral turpitude if there is a "realistic probability" that the elements of that statute would be applied "to conduct that falls beyond the scope of the generic federal offense").

It is well established that a simple assault or battery that only requires offensive touching or threatened offensive touching of another

committed with general intent that does not result in serious bodily harm is not considered to involve moral turpitude.[3] *See, e.g.*, *Matter of Ahortalejo-Guzman*, 25 I&N Dec. 465, 466 (BIA 2011); *Matter of Fualaau*, 21 I&N Dec. 475, 477 (BIA 1996). However, this general rule does not apply where a statute contains elements that deviate from those associated with simple assault and battery and "involves some *aggravating factor* that indicates the perpetrator's moral depravity." *Matter of Ahortalejo-Guzman*, 25 I&N Dec. at 466 (emphasis added). In assessing whether an alien convicted under such a statute has committed a crime involving moral turpitude, we weigh the level of danger posed by the perpetrator's conduct along with his or her degree of mental culpability in committing that conduct. *See Matter of Danesh*, 19 I&N Dec. 669, 673 (BIA 1988).

In this way, we have determined that an assault statute that makes it unlawful for a perpetrator to cause physical injury to another while possessing the specific intent to inflict such harm categorically defines a crime involving moral turpitude. *See Matter of Solon*, 24 I&N Dec. 239, 243 (BIA 2007).[4] Conversely, we have held that an assault statute prohibiting a perpetrator from causing injury to another "with criminal negligence" does not define a crime involving moral turpitude. *See Matter of Perez-Contreras*, 20 I&N Dec. 615, 618–19 (BIA 1992) ("Since there was no intent required for conviction, nor any conscious disregard of a substantial and unjustifiable risk, we find no moral turpitude inherent in the statute."). Most importantly for purposes of resolving this case, we have concluded that assault and battery offenses that require a state of mind falling between specific intent and criminal negligence—for instance, general intent and recklessness—are morally turpitudinous if they "necessarily involve[] aggravating factors that *significantly increase*[] *their culpability*" relative to simple assault. *Matter of Sanudo*, 23 I&N Dec. 968, 971 (BIA 2006) (emphasis added).

One such aggravating factor is the use of a deadly or dangerous weapon or instrument—conduct that magnifies the danger posed by the perpetrator and demonstrates his or her heightened propensity for violence and indifference to human life. *See Matter of Medina*, 15 I&N Dec. 611, 612–14 (BIA 1976), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171

---

[3] The meaning of the phrase "general intent" varies considerably across jurisdictions and does not always denote one particular state of mind. In its most generic sense, general intent refers to a mental state in which the perpetrator intentionally engages in conduct, without regard to whether he or she intends that conduct to achieve a particular result. *See Black's Law Dictionary* 825–26 (8th ed. 2004).

[4] The phrase "specific intent" connotes a mental state in which the perpetrator willfully commits a forbidden act with the conscious purpose of bringing about a particular result. *See Black's Law Dictionary*, *supra*, at 826.

(7th Cir. 1977) (unpublished table decision); *see also Weedin v. Tayokichi Yamada*, 4 F.2d 455, 457 (9th Cir. 1925) (stating that "assault with a deadly weapon, . . . where the circumstances of the assault show a willful, malignant, and abandoned heart, . . . involves moral turpitude beyond any question"); *Matter of O-*, 3 I&N Dec. 193, 196–98 (BIA 1948) (holding that assault with a deadly weapon under Connecticut law is a crime involving moral turpitude). In *Medina*, we concluded that a conviction for aggravated assault with a deadly weapon categorically involved moral turpitude, despite the fact that the Illinois statute at issue could be violated with a mental state of recklessness, because although the "statute may not require a specific intent to cause a particular harm, the violator must show a willingness to commit the act in disregard of the *perceived risk*." *Matter of Medina*, 15 I&N Dec. at 614 (emphasis added).

With respect to section 245(a)(1), the relevant jury instructions indicate that a violation of this provision requires proof of the following elements: (1) the defendant did an act that by its nature would directly and probably result in the application of force to a person, using either (a) a deadly weapon or instrument, or (b) force likely to produce great bodily injury to another; (2) the defendant did the act willfully; and (3) when the defendant acted, he or she (a) was *aware of facts* that would lead a reasonable person to realize that his or her act by its nature would directly and probably result in the application of force to someone and (b) had the present ability to apply such force. Judicial Council of California Criminal Jury Instruction 875 (Oct. 2016).

In this regard, section 245(a)(1) is different from the statute in *Medina* because it does not require that a perpetrator subjectively perceive the risk posed by his or her conduct. *See Ceron*, 747 F.3d at 784. We therefore must determine whether a violation of section 245(a)(1) necessarily requires a culpable mental state that falls within the definition of a crime involving moral turpitude. For the below reasons, we conclude that it does.

California has variously defined "assault" as an "unlawful *attempt* . . . to commit a violent injury on the person of another," Cal. Penal Code § 240 (West 2017) (emphasis added), and as an "incipient or inchoate battery," *People v. Colantuono*, 865 P.2d 704, 710 (Cal. 1994), *superseded by statute on other grounds as recognized in People v. Conley*, 373 P.3d 435, 441 n.4 (Cal. 2016). Given these divergent definitions, it was unclear whether California assault entailed a specific intent to commit battery. The California Supreme Court has since clarified that "attempt" for purposes of "assault" does not entail specific intent—rather, it refers to "an intent to commit some act which would be indictable, if done, either from its own character or that of its natural and probable consequences."

*Williams*, 29 P.3d at 202 (citation omitted).[5] In other words, according to the California Supreme Court,

> [A] defendant guilty of assault *must be aware of the facts* that would lead a reasonable person to realize that a battery would *directly, naturally and probably* result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur.
>
> In adopting this knowledge requirement, we do not disturb our previous holdings. Assault is still a general intent crime . . . . Likewise, *mere recklessness or criminal negligence is still not enough* because a jury cannot find a defendant guilty of assault based on facts he should have known but did not know.

*Id.* (emphases added) (footnotes and citations omitted).

The Ninth Circuit has addressed the implications of *Williams* in several criminal sentencing cases in which the issue was whether the mental state under section 245(a)(1) is sufficiently "intentional" to justify treating a conviction for California assault as a crime of violence under 18 U.S.C. § 16(a) (2006).[6] *See United States v. Jimenez-Arzate*, 781 F.3d 1062, 1064–65 (9th Cir.) (per curiam), *cert. denied*, 136 S. Ct. 120 (2015) (mem.); *United States v. Grajeda*, 581 F.3d 1186, 1193–97 (9th Cir. 2009);[7] *United States v. Heron-Salinas*, 566 F.3d 898, 899 (9th Cir. 2009). While the "use of physical force" issue differs from the question presented here, these issues are closely related in one key respect—they both focus on the level of "intent" with which an assault under section 245(a)(1) must be committed.

The defendant in *Grajeda* asserted that a violation of section 245(a)(1) does not "require proof of sufficiently intentional conduct to qualify" as a crime of violence because, pursuant to *Williams*, "California's definition of

---

[5] The court considered different possible definitions of "attempt" under section 240, including one that would have required a specific intent to commit battery. *See Williams*, 29 P.3d at 201–02. While the court rejected that possibility, the definition it ultimately adopted requires a close proximity between the conduct and resulting battery. *See id.* at 202 (stating that an assault only occurs where "[t]he next movement would, *at least to all appearance*, complete the battery" (citation omitted)). As a consequence, the California Supreme Court concluded that "a specific intent to injure is not an element of assault because the assaultive act, by its nature, subsumes such an intent." *Id.*

[6] Section 16(a) defines a crime of violence as an offense having "as an element the use . . . of physical force." Section 2L1.2 of the United States Sentencing Guidelines is identical to § 16(a) in all relevant respects. *United States v. Grajeda*, 581 F.3d 1186, 1190, 1197 (9th Cir. 2009).

[7] *Grajeda*, 581 F.3d at 1191–92 & n.5, addressed the same version of section 245(a)(1) that is at issue here.

assault requires merely criminally negligent conduct, and thus does not have as an element the intentional *use* of force." *Grajeda*, 581 F.3d at 1192, 1194 (emphasis added).[8]

The Ninth Circuit rejected the defendant's position, stating that the California Supreme Court's decision in *Williams* reflects that

> section 245(a)(1) requires proof of an intentional "violent act" with a deadly weapon or instrument or with force likely to cause serious bodily injury that "by its nature will directly and immediately cause" the application of physical force to another. While this formulation of the necessary *mens rea* does not fit neatly with the standard articulated in *Fernandez-Ruiz*, it satisfies the concerns animating *Leocal* and *Fernandez-Ruiz* that the proscribed conduct be "violent" and "active," and the use of force not merely accidental . . . .

*Id.* at 1195 (citation omitted). In other words, the Ninth Circuit concluded in *Grajeda* that a violation of section 245(a)(1) requires a culpable mental state greater than recklessness and criminal negligence.[9]

We therefore hold that a violation of section 245(a)(1) necessarily involves a culpable mental state that falls within the definition of a crime involving moral turpitude. Like the Illinois statute at issue in *Medina*, section 245(a)(1) requires that a perpetrator willfully engage in dangerous conduct, by means of either an object employed in a manner likely to cause great bodily injury or force that is, in and of itself, likely to cause such an injury. Section 245(a)(1) further requires that a perpetrator have knowledge, while not of the risk of causing such injury, of the facts that make such an injury likely. With respect to the question whether conduct is morally turpitudinous, the result should be no different for a person who willfully commits such dangerous conduct with knowledge of all the facts that make it dangerous than it is for one who commits the conduct with the knowledge that it is dangerous.[10]

---

[8]   The Supreme Court has held that the phrase "use of force" in the definition of a crime of violence requires proof of active employment of force and cannot be satisfied by negligent or accidental conduct. *Leocal v. Ashcroft*, 543 U.S. 1, 9–11 (2004). Extending this holding, the Ninth Circuit has stated that "neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc).

[9]   More recently, in *Jimenez-Arzate*, 781 F.3d at 1064–65, the Ninth Circuit declined to reconsider *Grajeda* and concluded that assault under section 245(a)(1) cannot be committed with a mental state of mere recklessness. In that decision, the court additionally held that "*Ceron* does not clearly indicate a different interpretation of the mens rea requirement for § 245(a)(1) than that set forth in *Grajeda*." *Id.* at 1065.

[10]   We would reach a different conclusion if faced with a statute, such as one criminalizing driving under the influence ("DUI"), that does not require knowledge that

(continued . . .)

We additionally hold that a violation of section 245(a)(1) necessarily involves an aggravating factor that renders such an offense reprehensible. Both portions of the statute require that a perpetrator willfully use either a deadly weapon or instrument,[11] or force likely to produce great bodily injury, while being aware of the facts that make it likely that such conduct will cause, at a minimum, great bodily injury to another person. *See People v. Aguilar*, 945 P.2d 1204, 1213 (Cal. 1997) (explaining that a jury must find whether a violator's conduct "had the capability and probability of inflicting great bodily injury under either a 'deadly weapon' theory or a 'force likely' theory. The jury's analytical process [is] the same in either event."); *People v. Parrish*, 217 Cal. Rptr. 700, 704 (Cal. Ct. App. 1985) ("The focus [of section 245(a)] is on force likely to produce great bodily injury."). Such conduct "reflects a level of immorality that is greater than that associated with a simple offensive touching." *Matter of Sanudo*, 23 I&N Dec. at 971; *see also Matter of Kim*, 26 I&N Dec. 912, 918 (BIA 2017) (noting that California defines "great bodily injury" as a "significant or substantial injury" (citation omitted)).

Weighing the dangerous conduct necessarily involved in a violation of section 245(a)(1) along with the culpable mental state needed to commit such a violation, we conclude that an assault under this statute is no less base, vile, and depraved than the reckless aggravated assault offense we deemed turpitudinous in *Medina*. *See Matter of Ahortalejo-Guzman*, 25 I&N Dec. at 466. It is this "building together of elements" that reflects that the conduct criminalized under section 245(a)(1) "deviates further and further from the private and social duties that persons owe to one another and to society in general" and categorically falls within the definition of a crime involving moral turpitude. *Matter of Lopez-Meza*, 22 I&N Dec. 1188, 1196 (BIA 1999).

Finally, while we acknowledge that the unique mental state embodied in section 245(a)(1) does not correspond directly with the culpable mental

---

the conduct is itself dangerous or of the facts that make the proscribed conduct dangerous. We have previously held that a DUI will only involve moral turpitude if it necessarily involves an "aggravating factor," such as a "culpable mental state" that demonstrates that the perpetrator "knew, at the time that he was driving while under the influence of alcohol, that his driver's license had been suspended and that he was not permitted to drive." *Matter of Torres-Varela*, 23 I&N Dec. 78, 85 (BIA 2001) (citing *Matter of Lopez-Meza*, 22 I&N Dec. 1188, 1196 (BIA 1999)); *see also Marmolejo-Campos*, 558 F.3d at 914–16 (deferring to our reasoning in *Torres-Varela* and *Lopez-Meza*).

[11] *See People v. Aguilar*, 945 P.2d 1204, 1207 (Cal. 1997) (stating that, for purposes of section 245(a)(1), a deadly weapon or instrument is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury" (citation omitted)).

states we discussed in our prior decisions analyzing whether an assault or battery offense involves moral turpitude, we are not aware of any cases in which this unique mental state has led to the prosecution of an individual for conduct that is not turpitudinous. Thus, there is no realistic probability that section 245(a)(1) will be used to prosecute such conduct. *See Hernandez-Gonzalez*, 778 F.3d at 801.

## III. CONCLUSION

Having considered the issues raised by the Ninth Circuit in *Ceron*, we conclude that the respondent's conviction for assault under section 245(a)(1) of the California Penal Code renders him removable under section 237(a)(2)(A)(i) of the Act as an alien who has been convicted of a crime involving moral turpitude committed within 5 years after the date of admission for which a sentence of 1 year or longer may be imposed. The Immigration Judge therefore improperly terminated the removal proceedings and denied the DHS's motion to reconsider. The respondent has indicated that he does not wish to seek relief from removal. Since we cannot enter an order of removal in the first instance in this jurisdiction, we will remand the record solely for the entry of such an order. *See Noriega Lopez v. Ashcroft*, 335 F.3d 874, 883−85 (9th Cir. 2003). Accordingly, the DHS's appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded.

**ORDER:** The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.