# Matter of David TAVDIDISHVILI, Respondent

*Decided October 16, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Criminally negligent homicide in violation of section 125.10 of the New York Penal Law is categorically not a crime involving moral turpitude, because it does not require that a perpetrator have a sufficiently culpable mental state.

FOR RESPONDENT: Jon E. Garde, Esquire, Las Vegas, Nevada

FOR THE DEPARTMENT OF HOMELAND SECURITY: Kathleen M. Zapata, Associate Legal Advisor

BEFORE: Board Panel: COLE, PAULEY, and WENDTLAND, Board Members.

PAULEY, Board Member:

In a decision dated April 1, 2016, an Immigration Judge found the respondent removable under sections 237(a)(2)(A)(i) and (ii) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(i) and (ii) (2012), as an alien convicted of crimes involving moral turpitude, and ordered him removed from the United States. The respondent has appealed from that decision. The appeal will be sustained and the proceedings will be terminated.

The respondent is a native and citizen of Israel who was admitted to the United States as a lawful permanent resident on November 13, 1987. On June 30, 1992, he was convicted of criminally negligent homicide in violation of section 125.10 of the New York Penal Law. On February 11, 1998, he was convicted of promoting prostitution, which is a misdemeanor under section 230.20 of the New York Penal Law.[1]

Based on these convictions, the Department of Homeland Security ("DHS") initiated removal proceedings against the respondent and charged him with removability under section 237(a)(2)(A)(i) of the Act, as an alien convicted of a crime involving moral turpitude committed within 5 years

---

[1] Although the Immigration Judge found that the respondent was convicted of violating section 230.25 of the New York Penal Law, we take administrative notice of the contents of his record of conviction, which indicate that he was charged under that provision but was ultimately convicted of violating section 230.20. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (2017) (permitting us to take administrative notice of "the contents of official documents").

after the date of admission, and section 237(a)(2)(A)(ii), as an alien who at any time after admission is convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The Immigration Judge sustained both charges.

The only issue in this case is whether criminally negligent homicide under New York law is a crime involving moral turpitude. If it is not, the proceedings must be terminated, because neither charge of removability can be sustained.[2] *See Matter of Sanchez-Herbert*, 26 I&N Dec. 43, 45 (BIA 2012).

The respondent argues that his conviction does not render him removable because section 125.10 of the New York Penal Law punishes criminally negligent conduct, which is not morally turpitudinous. The parties submitted supplemental briefing on the question whether an offense that only requires criminal negligence for conviction is a crime involving moral turpitude.

As we stated in *Matter of J-G-D-F-*, 27 I&N Dec. 82 (BIA 2017),

> To determine whether the respondent's . . . offense is a crime involving moral turpitude under . . . the Act, we employ the "categorical approach" by "comparing the elements of the state offense to those of the generic [definition of a crime involving moral turpitude] to determine if there is a categorical match." *Escobar v. Lynch*, 846 F.3d 1019, 1024 (9th Cir. 2017) (citations omitted). "This [approach] requires us to focus on the minimum conduct that has a realistic probability of being prosecuted under the statute of conviction, rather than on the facts underlying the respondent's particular violation of that statute." *Matter of Silva-Trevino*, 26 I&N Dec. 826, 831 (BIA 2016); *see also Escobar*, 846 F.3d at 1024.
>
> "Although the immigration statutes do not specifically define offenses constituting crimes involving moral turpitude, a crime involving moral turpitude is generally a crime that '(1) is vile, base, or depraved and (2) violates accepted moral standards.'" *Escobar*, 846 F.3d at 1023 (citations omitted); *see also Matter of Silva-Trevino*, 26 I&N Dec. at 834. ("To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state.").

*Id.* at 83 (alterations in original).

We have held that moral turpitude inheres in crimes involving serious misconduct committed with at least a culpable mental state of recklessness—

---

[2] We agree with the respondent that the DHS has not established his removability under section 237(a)(2)(A)(i) of the Act on the basis of his misdemeanor conviction in 1998 for promoting prostitution, because it is unclear that this offense was committed within 5 years of his admission. *See* 8 C.F.R. § 1240.8(a) (2017) (providing that the DHS must prove that a respondent is removable "by clear and convincing evidence"). Although the respondent's record of conviction does not establish the date he committed this offense, it does indicate that he was convicted approximately 11 years after his admission as a lawful permanent resident in 1987. Under section 30.10(2)(c) of the New York Criminal Procedure Law, prosecution for a misdemeanor must generally be commenced within 2 years after the commission of the offense.

that is, "a *conscious disregard* of a substantial and unjustifiable risk." *Matter of Franklin*, 20 I&N Dec. 867, 870 (BIA 1994) (emphasis added) (holding that recklessly causing the death of another person was a crime involving moral turpitude), *aff'd Franklin v. INS*, 72 F.3d 571 (8th Cir. 1995). In *Matter of Medina*, 15 I&N Dec. 611, 614 (BIA 1976), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977), we concluded that a person acting with this mental state could be convicted of a crime involving moral turpitude because "recklessness requires an *actual awareness* of the risk created by the criminal violator's action"—in other words, a "violator must show a willingness to commit the act in disregard of the *perceived* risk." *Id.* (emphases added).

By contrast, crimes committed with "criminal negligence" are generally not morally turpitudinous, because neither "intent" nor a "*conscious disregard* of a substantial and unjustifiable risk" is required for conviction— that is, no sufficiently culpable mental state is necessary to commit such an offense. *Matter of Perez-Contreras*, 20 I&N Dec. 615, 619 (BIA 1992) (emphasis added); *see also Sotnikau v. Lynch*, 846 F.3d 731, 737 (4th Cir. 2017) ("Crimes involving criminal negligence . . . are generally excluded from the category of crimes that involve moral turpitude."); *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 323 (5th Cir. 2005) (recognizing that "negligence-based crimes usually do not amount to" crimes involving moral turpitude); *Partyka v. Att'y Gen. of U.S.*, 417 F.3d 408, 414 (3d Cir. 2005) (stating that since "the hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation," the offense of negligent assault on a law enforcement officer was not a crime involving moral turpitude because it lacked the "essential culpability requirement"). For this reason, we held that an assault committed with "criminal negligence" under Washington law, which occurs "when the perpetrator '*fails to be aware* of a substantial risk that a wrongful act may occur,'" does not involve moral turpitude. *Matter of Perez-Contreras*, 20 I&N Dec. at 618 (emphasis added) (quoting section 9A.08.010(1)(d) of the Revised Code of Washington).

Section 125.10 of the New York Penal Law provides that a "person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person." According to section 15.05(4) of the New York Penal Law, "A person acts with criminal negligence . . . when he *fails to perceive* a substantial and unjustifiable risk." (Emphasis added.)

Thus, "criminal negligence" under New York law is indistinguishable from the concept of "criminal negligence" we discussed in *Matter of Perez-Contreras*, and it is materially distinct from the concept of "recklessness" outlined in *Matter of Franklin* and *Matter of Medina*. For criminal negligence, a perpetrator need only *fail to perceive* a substantial and

unjustifiable risk, while recklessness requires that the perpetrator *consciously disregard* such a risk.  Because section 125.10 of the New York Penal Law reaches offenses committed with criminal negligence—that is, offenses that do not require a sufficiently culpable mental state—the elements of this statute do not categorically fall within the definition of a crime involving moral turpitude.[3]  The DHS does not contend that section 125.10 is divisible in any pertinent respect.  Thus, notwithstanding the unfortunate fact that a death resulted from the respondent's negligent conduct, his conviction for criminally negligent homicide under section 125.10 is not for a crime involving moral turpitude.[4]

We therefore conclude that the Immigration Judge erred in finding that the respondent is removable under sections 237(a)(2)(A)(i) and (ii) of the Act, and we will terminate these proceedings.  In light of this conclusion, we need not address the parties' remaining arguments.  Accordingly, the respondent's appeal will be sustained and the proceedings will be terminated.

**ORDER:**  The appeal is sustained and the removal proceedings are terminated.

---

[3]  We have determined that a sexual offense involving a minor under the age of 16, where the age differential between the perpetrator and the victim is significant, categorically involves moral turpitude, even if the State statute defining the offense does not require the perpetrator to have any culpable mental state with regard to the age of the child. *Matter of Jimenez-Cedillo*, 27 I&N Dec. 1, 5 (BIA 2017).  However, that decision does not conflict with our holding because the statute at issue there required a sufficiently culpable mental state—that is, the perpetrator had to "engage in an *intentional* sexual act or other contact with a minor victim."  *Id.* at 4 (emphasis added).  Moreover, we concluded that all violations of the statute are inherently reprehensible because they "contravene society's interest in protecting children from sexual exploitation." *Id.* at 5.

[4]  We are unpersuaded by the DHS's reliance on our holding in *Matter of Wu*, 27 I&N Dec. 8 (BIA 2017).  In that case, we determined that assault with a deadly weapon or force likely to produce great bodily injury under section 245(a)(1) of the California Penal Code is categorically a crime involving moral turpitude because a violator of that statute must (1) "*willfully engage in dangerous conduct*, by means of either an object employed in a manner likely to cause great bodily injury or force that is, in and of itself, likely to cause such an injury"; and (2) "have *knowledge*, while not of the risk of causing such injury, *of the facts that make such an injury likely*."  *Id.* at 14 (emphases added).  We concluded that there is no moral distinction between "a person who willfully commits . . . dangerous conduct with knowledge of all the facts that make it dangerous [and] one who commits the conduct with the knowledge that it is dangerous."  *Id.*  However, as noted, "criminal negligence" under New York law does not require a perpetrator to have *any awareness* of the facts that make his or her conduct dangerous.  Thus, it is materially distinct from "the unique mental state embodied in section 245(a)(1)" of the California Penal Code. *Id.* at 15.