# United States Court of Appeals
## For the First Circuit

No. 16-2220

JOAO LOPES COELHO,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Kayatta,
<u>Circuit Judges</u>.

Todd Pomerleau, with whom Jeffrey B. Rubin and Rubin Pomerleau P.C. were on brief, for petitioner.

Andrew N. O'Malley, with whom Lindsay M. Murphy, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Cindy S. Ferrier, Assistant Director, were on brief, for respondent.

Emma Winger, Immigration Impact Unit, Committee for Public Counsel Services, on brief for the Massachusetts Committee for Public Counsel Services Immigration Impact Unit, the National Immigration Project of the National Lawyers Guild, and the Immigrant Defense Project, amici curiae.

July 24, 2017

LYNCH, **Circuit Judge**.  This appeal presents the question of whether the Board of Immigration Appeals ("BIA") committed reversible error when it held that the Massachusetts crime of assault and battery with a dangerous weapon ("ABDW"), in violation of Mass. Gen. Laws ch. 265, § 15A(b), is categorically a crime involving moral turpitude ("CIMT") under the Immigration and Nationality Act ("INA"), Pub. L. No. 82-414, 66 Stat. 163 (1952) (codified as amended in scattered sections of 8 U.S.C.).  The consequence of this BIA ruling is that petitioner Joao Lopes Coelho is not eligible for cancellation of removal.  Because we remain uncertain about the BIA's views on the relevant Massachusetts law governing its CIMT determination, we remand for further consideration consistent with this opinion.

I.

Coelho entered the United States without inspection in 1986.  He has continued to reside here since that date and now has a U.S. citizen son.  In September 1996, Coelho pled guilty to one count of Massachusetts ABDW against his wife.  After the Department of Homeland Security ("DHS") initiated removal proceedings against Coelho in June 2010, he conceded his removability under 8 U.S.C. § 1182(a)(6)(A)(i) but submitted an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1).  "Cancellation of removal is a form of discretionary relief, the granting of which allows a non-resident alien, otherwise removable, to remain in the

- 3 -

United States." Ayeni v. Holder, 617 F.3d 67, 70 (1st Cir. 2010). In his application, Coelho noted in particular that his removal "would result in exceptional and extremely unusual hardship" to his son. 8 U.S.C. § 1229b(b)(1)(D). DHS moved to pretermit Coelho's application on the ground that his Massachusetts ABDW conviction constituted a conviction for a CIMT and thus rendered him ineligible for cancellation of removal. See id. § 1229b(b)(1)(C) (providing that an alien, to be eligible for cancellation of removal, must not have been "convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3)," the first two of which refer to crimes involving moral turpitude). After Coelho failed to timely respond to the motion to pretermit, the immigration judge ("IJ") granted the government's motion.

Coelho filed a motion to reconsider, which the IJ denied. Explaining the denial, the IJ concluded that Massachusetts ABDW is categorically a CIMT because of the presence of an aggravating element, namely the use of a dangerous weapon. The IJ further acknowledged that Massachusetts case law defines "dangerous weapon" to include "common objects," but noted that this definition "should not be a determinative factor because it is the defendant's use of the object in a dangerous manner which is the vile act." Finally, the IJ found that "based on the statute's requirement that a dangerous weapon be used, [she could reasonably] conclude that there is no realistic probability that [the Massachusetts

- 4 -

ABDW statute] would be applied to reach conduct that does not involve moral turpitude."

The BIA dismissed Coelho's appeal in an opinion dated October 31, 2013. Applying de novo review, the BIA agreed with the IJ's conclusion that Massachusetts ABDW is categorically a CIMT because "assault or battery which necessarily involves an aggravating factor indicative of the perpetrator's moral depravity is a crime involving moral turpitude" and "the knowing or attempted use of deadly force is deemed to be an act of moral depravity."

Coelho petitioned for review of the October 31, 2013 decision. Shortly thereafter, the government -- with Coelho's assent -- moved this court to remand the case to the BIA for reconsideration of whether Coelho's Massachusetts ABDW conviction is categorically a CIMT that renders him ineligible for cancellation of removal. We granted the government's unopposed motion and vacated the BIA's decision.

On April 10, 2015, the BIA issued a second opinion, once again holding that Massachusetts ABDW is categorically a CIMT. The BIA applied its then-existing framework, as laid out in Matter of Silva-Trevino, for determining whether an offense involves moral turpitude. See 24 I. & N. Dec. 687, 704 (A.G. 2008), vacated by 26 I. & N. Dec. 550 (A.G. 2015), and overruled by 26 I. & N. Dec. 826 (B.I.A. 2016). Under this approach, the first step was "to examine the statute of conviction under the categorical

- 5 -

approach and determine whether there was a 'realistic probability' that the statute would be applied to conduct not involving moral turpitude." Id. If the categorical approach proved inconclusive, the adjudicator proceeded "to look to the record of conviction under the modified categorical approach," and, if the modified categorical approach also proved inconclusive, "to consider any relevant evidence outside the record of conviction to resolve the moral turpitude question." Id.

Applying that framework, the BIA found under the first step that Massachusetts ABDW is categorically a CIMT. The BIA acknowledged that the "presence of an 'aggravating factor'" -- here, the use of a dangerous weapon -- "is not always dispositive as to whether an offense involves moral turpitude," but it noted that Massachusetts ABDW involves not only an aggravating factor but also the requisite mental state for an offense to be deemed morally turpitudinous. Specifically, when ABDW is intentionally committed, "the statute requires . . . the intentional application of force by use of a dangerous weapon." Alternatively, when ABDW is recklessly committed, the statute requires "the intentional commission of a reckless or wanton act with a dangerous weapon, defined as more than gross negligence, resulting in physical or bodily injury that interferes with the victim's health or comfort." Accordingly, "[b]ecause the statute includes the intent to use a

- 6 -

dangerous weapon and/or a resultant injury," the BIA concluded that Massachusetts ABDW is categorically a CIMT.

Coelho once again petitioned this court to review the BIA's April 10, 2015 decision. We temporarily held the petition in abeyance while Coelho moved the BIA to reconsider its decision. The BIA denied that motion in a brief opinion dated September 2, 2015. On April 5, 2016, with the government moving for another remand with Coelho's assent, we remanded the case a second time for the BIA to consider whether Coelho's argument that Massachusetts ABDW is not categorically a CIMT "because a conviction for the reckless commission of [ABDW] does not require a defendant to be aware of, and consciously disregard, the risk imposed by his conduct" had been properly raised before the BIA such that it had been exhausted and could be reviewed by us. We accordingly vacated the BIA's April 10, 2015 decision.

In the BIA's fourth and final opinion, dated September 7, 2016, the agency once again dismissed Coelho's appeal. The BIA stated that whether or not Coelho had raised this argument before the agency, the agency had previously addressed both the intentional and reckless prongs of Massachusetts ABDW and had already found that even reckless ABDW is categorically a CIMT. The BIA restated its prior finding that "when committed recklessly, the statute requires an intentional act with a dangerous weapon resulting in physical or bodily injury." Further, the BIA observed

that Massachusetts defines "recklessness" as "knowingly or intentionally disregarding an unreasonable risk that involves a high degree of probability that death or serious bodily harm will result" (alterations omitted) (citing Commonwealth v. Welansky, 55 N.E.2d 902, 910 (Mass. 1944)).  Critically, the BIA noted in a parenthetical -- but without elaboration -- that under Massachusetts law, "[k]nowing facts that would cause a reasonable man to know the danger is equivalent to knowing the danger" (quoting Welansky, 55 N.E.2d at 910).  In light of this case law, the BIA "affirm[ed] [its] prior decision finding that a recklessly or wantonly committed offense under the [Massachusetts ABDW] statute is sufficient to render it a categorical [CIMT]."

This petition for review followed.  After the BIA had issued its last decision in this case and Coelho had filed his petition, the BIA issued a decision in Matter of Wu, 27 I. & N. Dec. 8 (B.I.A. 2017), the potential relevance of which we discuss below.

II.

Two different standards of review are involved.  "We review the BIA's legal conclusions de novo, but we afford Chevron deference to the BIA's interpretation of the [INA], including its determination that a particular crime qualifies as one of moral turpitude, unless that interpretation is 'arbitrary, capricious, or clearly contrary to law.'"  Da Silva Neto v. Holder, 680 F.3d

- 8 -

25, 28 (1st Cir. 2012) (quoting <u>Idy</u> v. <u>Holder</u>, 674 F.3d 111, 117 (1st Cir. 2012)). Under these standards of review, we give deference to the BIA's "construction of the term 'moral turpitude,'" but we do not give deference to "its reading of an underlying criminal statute (as to which it has no expertise)." <u>Patel</u> v. <u>Holder</u>, 707 F.3d 77, 79 (1st Cir. 2013).

Although the INA does not define "crime involving moral turpitude," this circuit has adopted the BIA's definition of that term as "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." <u>Maghsoudi</u> v. <u>INS</u>, 181 F.3d 8, 14 (1st Cir. 1999) (quoting <u>Hamdan</u> v. <u>INS</u>, 98 F.3d 183, 186 (5th Cir. 1996)); <u>see also</u> <u>Da Silva Neto</u>, 680 F.3d at 29 (defining CIMT alternatively as "'an act which is per se morally reprehensible and intrinsically wrong' and is 'accompanied by a vicious motive or a corrupt mind'" (quoting <u>Maghsoudi</u>, 181 F.3d at 14)).

This circuit's approach to the CIMT analysis "has been generally consistent with the first two steps of the . . . framework" applied by the BIA in its April 10, 2015 decision. <u>Da Silva Neto</u>, 680 F.3d at 29. Specifically, "[w]e have begun by looking 'to the inherent nature of the crime of conviction, as defined in the criminal statute,' to determine whether it fits the

CIMT definition. If it does, we have said that 'our inquiry may end there.'" Id. (quoting Idy, 674 F.3d at 118).[1]

The criminal statute at issue in this case establishes certain imprisonment terms and fine amounts for "[w]hoever commits an assault and battery upon another by means of a dangerous weapon." Mass. Gen. Laws ch. 265, § 15A(b). Massachusetts common law, which supplies the substantive definition of ABDW, see United States v. Tavares, 843 F.3d 1, 12 (1st Cir. 2016), recognizes "two separate aspects" to the crime of ABDW, Commonwealth v. Burno, 487 N.E.2d 1366, 1368 (Mass. 1986). The intentional theory of ABDW punishes "the intentional and unjustified use of force upon the person of another, however slight." Id. at 1368-69 (citation omitted). Meanwhile, the reckless theory punishes "the intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another." Id. at 1369.

The Massachusetts definition of "recklessness" departs from the definition employed by the Model Penal Code ("MPC") and a majority of states in that a defendant in Massachusetts need not have been subjectively aware of the risk posed by his conduct in

_____

[1] Under this categorical approach, neither we nor the BIA can consider Coelho's actual conduct, but rather only the "'least of th[e] acts' criminalized." Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013) (alteration in original) (quoting Johnson v. United States, 559 U.S. 133, 137 (2010)).

order to have acted recklessly.  Cf. Model Penal Code § 2.02(2)(c).

That is, the "classic formulation of recklessness" requires an "actual awareness and a conscious disregard for a 'substantial and unjustifiable risk'" on the defendant's part.  Idy, 674 F.3d at 119 (citing N.H. Rev. Stat. Ann. §§ 626:2, 631:3).   In Massachusetts, by contrast, the SJC has said that "even if a particular defendant is so stupid or so heedless that in fact he did not realize the grave danger [posed by his conduct], he cannot escape the imputation of wanton or reckless conduct in his dangerous act or omission, if an ordinary normal man under the same circumstances would have realized the gravity of the danger." Welansky, 55 N.E.2d at 910 (alterations omitted).   Indeed, in Massachusetts, "[k]nowing facts that would cause a reasonable man to know the danger is equivalent to knowing the danger."  Id.

Much of the briefing and oral argument before us has focused on this aspect of the Massachusetts formulation of recklessness.   Specifically, Coelho argues that the BIA mischaracterized Massachusetts law by failing to take adequate account of the state's departure from the "classic" MPC formulation of recklessness.  Accordingly, Coelho says, we must remand so that the BIA can consider in the first instance whether, even under the

correct articulation of Massachusetts law, the crime of reckless ABDW is categorically a CIMT.[2]

There are some difficulties with Coelho's argument because the BIA did expressly include in its discussion the crucial quote from Welansky that "[k]nowing facts that would cause a reasonable man to know the danger is equivalent to knowing the danger." 55 N.E.2d at 910. Nonetheless, the BIA did so merely in a parenthetical without any explanation of how this aspect of Massachusetts law figures into its CIMT determination. Further, the BIA did not include the "so stupid or so heedless" clause from Welansky.

The government responds that regardless of the BIA's sparse discussion of Massachusetts law on recklessness, the agency's subsequent decision in Matter of Wu allows us to uphold the outcome in this case. See 27 I. & N. Dec. 8. There, the BIA concluded that the crime of assault with a deadly weapon or force likely to produce great bodily injury, in violation of section 245(a)(1) of the California Penal Code ("CPC"), categorically constitutes a CIMT. Id. at 8-9, 14. As the government emphasizes, a conviction under section 245(a)(1) of the CPC, like a conviction

---

[2] We have recently held, in a different statutory context, that Massachusetts reckless ABDW is not categorically a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B). See United States v. Windley, No. 16-1949, slip op. at 6 (1st Cir. July 21, 2017) (per curiam).

for Massachusetts reckless ABDW, "requires knowledge of the relevant facts but does not require subjective appreciation of the ordinary consequences of those facts."  Id. at 10; see also id. at 12 (noting that an element of section 245(a)(1) is the fact that "when the defendant acted, he or she . . . was aware of facts that would lead a reasonable person to realize that his or her act by its nature would directly and probably result in the application of force to someone" but that the defendant need not have "subjectively perceive[d] the risk posed by his or her conduct").

While the mens rea requirements of CPC section 245(a)(1) and Massachusetts reckless ABDW do share that commonality, the government leaves unaddressed other aspects of Matter of Wu that complicate matters.  For one, the government does not comment on the extent to which the BIA's holding in Matter of Wu relies on the Ninth Circuit's reading of the mental state required for a conviction under section 245(a)(1).  See id. at 13-14, 14 nn.8-9 (discussing United States v. Grajeda, 581 F.3d 1186 (9th Cir. 2009)).  Nor does the government address the BIA's caveat that it "would reach a different conclusion if faced with a statute, such as one criminalizing driving under the influence . . . , that does not require knowledge that the conduct is itself dangerous or of the facts that make the proscribed conduct dangerous."  Id. at 14-15 n.10; accord United States v. Hart, 674 F.3d 33, 43 n.8 (1st Cir. 2012) (noting that "[i]n Massachusetts, conduct that

- 13 -

underlies a conviction for operating under the influence . . . and causing serious bodily injury may also be charged as ABDW" and collecting cases).  As the government has not fully briefed these issues, Matter of Wu does not alleviate our uncertainty about the BIA's views on Massachusetts law on recklessness.  Simply put, we are left with too many questions about the BIA's thinking on the mental state required for a Massachusetts reckless ABDW conviction and cannot proceed with reviewing the BIA's CIMT determination before those questions are resolved.[3]

Accordingly, we remand so that the BIA can consider the following three issues: First, what is the effect, if any, of Matter of Wu on the outcome that Massachusetts ABDW is categorically a CIMT?  Second, how does Welansky's prescription -- that a defendant "so stupid or so heedless that . . . he did not realize" the risk posed by his conduct can nonetheless be deemed to have acted recklessly, so long as "an ordinary normal man under the same circumstances would have realized" the risk -- impact the BIA's analysis of the moral depravity of Massachusetts

---

[3]    We acknowledge how much Coelho's removal proceedings have been prolonged.  After all, his ABDW conviction occurred more than two decades ago, removal proceedings were instituted seven years ago, the IJ ruled against him five years ago, and proceedings in this court started almost four years ago.  Much of that delay, however, was occasioned by the government, which sought two remands to the BIA prior to the instant petition.

- 14 -

reckless ABDW?  55 N.E.2d at 910 (alterations omitted).  Finally, was Coelho convicted of intentional or reckless ABDW?[4]

### III.

We vacate the BIA's September 7, 2016 opinion, the effect of which was to render Coelho ineligible for cancellation of removal, and remand for further proceedings consistent with our opinion.

---

[4]     We include this final question because the BIA's answer may obviate the need for us to address whether Massachusetts reckless ABDW is categorically a CIMT once this case returns to us.