# Matter of Juan Pablo AGUILAR-MENDEZ, Respondent

*Decided March 12, 2021*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The respondent's conviction for assault by means of force likely to produce great bodily injury in violation of section 245(a)(4) of the California Penal Code is categorically one for a crime involving moral turpitude. *Matter of Wu*, 27 I&N Dec. 8 (BIA 2017), followed.

FOR RESPONDENT: Hector R. Ortega, Esquire, Montebello, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jean Lin, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Deputy Chief Appellate Immigration Judge; LIEBOWITZ, Appellate Immigration Judge; GELLER, Temporary Appellate Immigration Judge.

MALPHRUS, Deputy Chief Appellate Immigration Judge:

In a decision dated March 13, 2018, an Immigration Judge denied the respondent's application for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2018), and his request for voluntary departure pursuant to section 240B(b) of the Act, 8 U.S.C. § 1229c(b) (2018). The respondent has appealed from this decision. The appeal will be dismissed in part, and the record will be remanded for further consideration of his request for voluntary departure. The respondent has also filed a motion to terminate his removal proceedings, which will be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States without being admitted or paroled. On September 2, 2014, he was placed in removal proceedings after he was personally served with a notice to appear. Although this notice to appear did not specify the time or date of the respondent's initial removal hearing, the record reflects that he was served with a notice of hearing on September 5, 2014, which informed him

that his initial hearing was scheduled to take place at 8:30 a.m. on September 23, 2014, at the Los Angeles, California, Immigration Court.[1]

The respondent appeared at the scheduled hearing with counsel. He conceded proper service of the notice to appear, admitted the factual allegations contained in the notice to appear, and conceded that his entry without admission or parole rendered him removable as charged. He then applied for cancellation of removal under section 240A(b)(1) of the Act.

On July 11, 2014, the respondent was convicted of assault by means of force likely to produce great bodily injury in violation of section 245(a)(4) of the California Penal Code. The Immigration Judge concluded that this offense was a conviction for a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2018), which rendered the respondent statutorily ineligible for cancellation of removal. The Immigration Judge also denied the respondent's request for voluntary departure.

The respondent argues on appeal that he is eligible for cancellation of removal because his conviction for assault under California law is not one for a crime involving moral turpitude. He also contends that he is eligible for voluntary departure and warrants this benefit as a matter of discretion. During the pendency of his appeal, he filed a motion to terminate, arguing that his notice to appear was defective and did not vest the Immigration Judge with jurisdiction over his removal proceedings because it failed to specify the time and date of his initial hearing. We review these questions of law, discretion, and judgment de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2020).

## II. ANALYSIS

### A. Cancellation of Removal

To establish eligibility for cancellation of removal, the respondent must demonstrate, among other things, that he has not been convicted of a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act. Section 240A(b)(1)(C) of the Act; *see also* 8 C.F.R. § 1240.8(d) (2020). To determine whether the respondent's assault conviction is one for a crime involving moral turpitude, we use the categorical approach, examining whether the elements defining section 245(a)(4) "fit[] within the generic definition of a crime involving moral turpitude." *Matter of Silva-Trevino*, 26 I&N Dec. 826, 831 (BIA 2016) (applying the categorical approach articulated in *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013), in the moral turpitude context); *see also Safaryan v. Barr*, 975 F.3d 976, 985 (9th Cir.

---

[1] We note that the notice to appear and notice of hearing specified the address of the Los Angeles Immigration Court.

2020). An "element" of a statute is conduct that must be "'necessarily' involved" in an offense. *Moncrieffe*, 569 U.S. at 190 (citation omitted).

"The term 'moral turpitude' generally refers to conduct that is 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Matter of Wu*, 27 I&N Dec. 8, 9 (BIA 2017) (quoting *Matter of Silva-Trevino*, 26 I&N Dec. at 833). "To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state." *Id.* (quoting *Matter of Silva-Trevino*, 26 I&N Dec. at 834).

At all relevant times, the respondent's statute of conviction provided:

> Any person who commits an assault[2] upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

Cal. Penal Code § 245(a)(4) (West 2014).

In *Matter of Wu*, we considered a previous version of this statute, which punished "an assault upon the person of another with a deadly weapon or instrument other than a firearm *or by any means of force likely to produce great bodily injury*." Cal. Penal Code § 245(a)(1) (West 2011) (emphasis added). We held that all forms of assault proscribed by this statute (including assault by means of force likely to produce great bodily injury) necessarily involve reprehensible conduct and a culpable mental state falling within the definition of a crime involving moral turpitude. *Matter of Wu*, 27 I&N Dec. at 14–15.

In 2012, the California Legislature removed "the distinct offense of assault by means likely to produce great bodily injury" from former section 245(a)(1) and placed it in a new and separate section—namely, section 245(a)(4), the respondent's statute of conviction. *Safaryan*, 975 F.3d at 980 n.1; *see also Matter of Wu*, 27 I&N Dec. at 9 n.2. Although the respondent was convicted under section 245(a)(4), rather than former section 245(a)(1), the operative language of both statutes is identical. Thus, our reasoning in *Matter of Wu* regarding the elements of former section 245(a)(1) applies with equal force to section 245(a)(4). *See Safaryan*, 975 F.3d at 984 n.3 (noting the similarity of these statutes and stating that its decision to uphold our determination in *Wu* regarding "the prior version of § 245(a)(1) is *necessarily dispositive of . . .* § 245(a)(4) as currently codified" (emphasis added)).

---

[2] At the time of the respondent's offense, California defined "assault" as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240 (West 2014).

Like a conviction under former section 245(a)(1), a violation of the respondent's statute of conviction must involve "an intentional 'violent act' . . . with force likely to cause serious bodily injury that 'by its nature will directly and immediately cause' the application of physical force to another." *Matter of Wu*, 27 I&N Dec. at 14 (citation omitted). In *Wu*, we concluded that such conduct necessarily involves "a culpable mental state greater than recklessness or criminal negligence" falling squarely "within the definition of a crime involving moral turpitude." *Id.*

Additionally, like former section 245(a)(1), a violation of the respondent's statute of conviction must involve an aggravating factor that renders an assault offense under that provision reprehensible. *Id.* at 15; *see also Matter of Sanudo*, 23 I&N Dec. 968, 971 (BIA 2006) (recognizing that assault offenses may be classified as reprehensible, and thus crimes involving moral turpitude, if they necessarily involve an aggravating factor, such as the intentional infliction of serious bodily injury on another). Specifically, section 245(a)(4) "require[s] that a perpetrator willfully use . . . force likely to produce great bodily injury, while being aware of the facts that make it likely that such conduct will cause, at a minimum, great bodily injury to another person."[3] *Matter of Wu*, 27 I&N Dec. at 15 (footnote omitted); *see also Safaryan*, 975 F.3d at 988. We explained in *Wu* that there is no meaningful difference between "a person who willfully commits such dangerous conduct with knowledge of all the facts that make it dangerous" and "one who commits [such] conduct with the knowledge that it is dangerous." *Matter of Wu*, 27 I&N Dec. at 14; *see also Safaryan*, 975 F.3d at 987 (finding our conclusion in this regard to be reasonable because committing "a violent act . . . by use of 'force likely to produce great bodily injury,' presents an *objectively obvious* risk of *substantial* harm").

"Weighing the dangerous conduct necessarily involved in a violation of [section 245(a)(4)] along with the culpable mental state needed to commit such a violation," we conclude, as we did with respect to former section 245(a)(1), that the conduct criminalized under the respondent's statute of conviction "'deviates further and further from the private and social duties that persons owe to one another and to society in general' and categorically falls within the definition of a crime involving moral turpitude." *Matter of Wu*, 27 I&N Dec. at 15.

The circuit courts, including the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, have observed that the phrase "moral turpitude" is the "quintessential example of an ambiguous phrase," and they have accorded deference to our determinations that "certain

---

[3] For purposes of assault under section 245(a)(4), "[g]reat bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." *People v. Drayton*, 255 Cal. Rptr. 3d 361, 362 (Ct. App. 2019) (citation omitted).

conduct is morally turpitudinous in [our] precedential decision[s]." *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909, 911 (9th Cir. 2009) (en banc); *see also, e.g.*, *Nunez-Vasquez v. Barr*, 965 F.3d 272, 279 (4th Cir. 2020) (same). Our case-by-case determinations in this regard promote the consistent application of the immigration laws nationwide. *See* Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 151(1), 100 Stat. 3359, 3384 (stating that "the immigration laws of the United States should be enforced . . . uniformly").

Significantly, the Ninth Circuit has accorded deference to our holding in *Matter of Wu* that assault by means of force likely to produce great bodily injury under former section 245(a)(1) is categorically a crime involving moral turpitude. *Safaryan*, 975 F.3d at 987. As noted, the elements of that offense are identical to those of the respondent's statute of conviction. *See id.* at 984 n.3. Thus, our holding in *Matter of Wu* controls here, and the Immigration Judge correctly determined, based on that holding, that the respondent's conviction for assault by means of force likely to produce great bodily injury in violation of section 245(a)(4) of the California Penal Code is categorically a conviction for a crime involving moral turpitude. We will therefore affirm the Immigration Judge's determination that this conviction renders the respondent statutorily ineligible for cancellation of removal pursuant to section 240A(b)(1)(C) of the Act.

## B. Voluntary Departure

The respondent also challenges the Immigration Judge's decision to deny his request for voluntary departure. The Immigration Judge stated in his decision, without elaboration, that he was denying voluntary departure in the exercise of discretion.[4] However, he did not make findings of fact regarding the relevant favorable and unfavorable factors in making this discretionary determination. *See Matter of Arguelles*, 22 I&N Dec. 811, 817 (BIA 1999) (outlining the favorable and unfavorable factors an Immigration Judge should consider in assessing whether voluntary departure is warranted in the exercise of discretion); *see also* 8 C.F.R. § 1003.1(d)(3)(i) (limiting this Board's fact-finding ability on appeal). We will therefore remand the record for the Immigration Judge to make all necessary findings of fact regarding the favorable and unfavorable factors in this case and determine whether or

---

[4]   The Immigration Judge's decision does not clearly address whether the respondent has been a person of good moral character during the 5-year period immediately preceding the entry of a final administrative order in this case. *See Matter of Ortega-Cabrera*, 23 I&N Dec. 793, 795 & n.1 (BIA 2005). However, since the respondent's conviction was entered more than 5 years ago, it falls outside the good moral character period and does not bar him from seeking voluntary departure pursuant to section 240B(b)(1)(B) of the Act.

not the respondent's request for voluntary departure warrants a favorable exercise of discretion. *See Campos-Granillo v. INS*, 12 F.3d 849, 852–53 (9th Cir. 1994) (remanding for an Immigration Judge to make all necessary findings regarding the favorable and unfavorable factors relating to a request for voluntary departure).

## C. Termination

Finally, the respondent's arguments in support of termination are foreclosed by intervening precedents from the Ninth Circuit and this Board, holding that a notice to appear that fails to specify the time or place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over proceedings, so long as a notice of hearing specifying this information is later served on the alien. *See Aguilar Fermin v. Barr*, 958 F.3d 887, 895 (9th Cir.), *cert. denied*, 141 S. Ct. 664 (2020); *Karingithi v. Whitaker*, 913 F.3d 1158, 1162 (9th Cir. 2019), *cert. denied*, *Karingithi v. Barr*, 140 S. Ct. 1106 (2020); *Matter of Rosales Vargas & Rosales Rosales*, 27 I&N Dec. 745, 753–54 (BIA 2020); *Matter of Bermudez-Cota*, 27 I&N Dec. 441, 447 (BIA 2018). Here, the respondent was served with a notice of hearing specifying the time and place of his removal hearing, and jurisdiction properly vested in his case.

Additionally, the respondent has not shown that the notice to appear in this case violated his right to due process. *See United States v. Bastide-Hernandez*, 986 F.3d 1245, 1248 (9th Cir. 2021) ("While a defective [notice to appear] does not affect jurisdiction, it can create due process violations."); *see also, e.g.*, *LaChance v. Erickson*, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard."). Although, as noted, the notice to appear in this case did not specify the time and date of his initial hearing, the respondent was served with notices of hearing specifying this information, and he appeared for his initial hearing and each of his subsequent hearings, as scheduled. Because the respondent has not demonstrated, in accordance with the applicable circuit standard, that the deficiency in his notice to appear "potentially affected" the outcome of his case, we are not persuaded that it violated his right to due process. *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018) (stating that an alien claiming a violation of due process must demonstrate that the alleged violation "potentially affected" the outcome of immigration proceedings).

Thus, there is no basis for terminating the respondent's proceedings or remanding the record. *See Matter of Sanchez-Herbert*, 26 I&N Dec. 43, 45 (BIA 2012). Accordingly, the motion to terminate is denied, the respondent's appeal from the Immigration Judge's decision denying his

application for cancellation of removal is dismissed, and the record is remanded for further consideration of his request for voluntary departure.

**ORDER:**   The motion to terminate is denied, and the respondent's appeal is dismissed in part.

**FURTHER ORDER:**   The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and the entry of a new decision.