Filed 2/2/17

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TRAVIS MICHAEL LAMB,<br><br>    Defendant and Appellant. | F069279<br><br>(Super. Ct. No. BF147677A)<br><br>**OPINION** |

        APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

        Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

        *Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.

**INTRODUCTION**

In *People v. Cook* (2015) 60 Cal.4th 922, our Supreme Court recently held a "sentence for manslaughter may not be enhanced for the infliction of great bodily injury as to anyone." (*Id.* at p. 924.) It left open the question not there presented "of whether and, if so, how great bodily injury enhancements may attach to other crimes for a defendant who is convicted of murder or manslaughter as well as those other crimes." (*Id.* at p. 938, fn. 3.) That question is presented in this case, where the defendant was convicted of assault by means of force likely to produce great bodily injury and of involuntary manslaughter of a single victim. We conclude the trial court did not err by imposing a great bodily injury enhancement on the assault count and a stay of the term imposed on the involuntary manslaughter count.

**PROCEDURAL HISTORY**

Defendant Travis Michael Lamb was convicted by jury of the following offenses: assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(1); count 2),[2] battery resulting in great bodily injury (§ 243, subd. (d); count 3) and

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]Prior to 2012, former subdivision (a)(1) of section 245 provided: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year…." (Stats. 2004, ch. 494, § 1.) Effective January 1, 2012, former subdivision (a)(1) of section 245 was divided into two separate and distinct subdivisions: section 245, subdivision (a)(1) now prohibits assault with a deadly weapon or instrument other than a firearm, and new subdivision (a)(4) prohibits assault by means of force likely to produce great bodily injury. (Stats. 2011, ch. 183, § 1.)

In 2013, defendant was charged and subsequently convicted of assault by means of force likely to produce great bodily injury. However, he was charged and convicted under former subdivision (a)(1) of section 245 rather than the current subdivision (a)(4). We note the description of the charge in the information, the jury instructions, and the abstract of judgment all correctly indicate defendant was charged and convicted of assault by means of force likely to produce great bodily injury. Because the record shows defendant was fully apprised of the offense of which he was tried, the mistake as to the subdivision cited is of no consequence. We will order the abstract of judgment amended to correct this error.

2.

involuntary manslaughter (§ 192, subd. (b)), a lesser included offense of the charged crime of second degree murder (§ 187, subd. (a); count 4). In addition, the jury also found true an enhancement alleging defendant personally inflicted great bodily injury in the commission of the assault, causing the victim to become comatose. In a bifurcated trial, the court found defendant had suffered one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), one prior serious felony conviction (§ 667, subd. (a)), and had served one prior prison term (§ 667.5, subd. (b)).

Defendant was sentenced to a total prison term of 16 years, including: three years for assault, doubled to six years for his prior strike, five years for the great bodily injury enhancement, and five years for defendant's prior serious felony conviction.[3] His sentences for battery and involuntary manslaughter were stayed pursuant to section 654.

Defendant raises the following claims on appeal: (1) the great bodily injury enhancement was improperly attached to his conviction for assault in count 2, and (2) the great bodily injury enhancement was barred by section 12022.7, subdivision (g), because defendant was also convicted of involuntary manslaughter in count 4. We disagree and affirm.

## FACTS

### *Prosecution's Case*

On the afternoon of March 23, 2013, Thomas Marler and his friend, Richard Gilroy, drove to a Vons market in Kern County. Gilroy stayed near the car while Marler went inside the grocery store. As Marler exited the store, a green Ford pickup truck slowly drove past the store entrance. Marler slapped the back of the pickup with his open palm to urge it to drive faster. Marler then walked back to his car.

The driver of the green pickup, defendant, sped through the parking lot and stopped behind Marler's vehicle, blocking Marler in his parking spot. Defendant jumped

---

[3]The court did not impose a sentence for defendant's prior prison term. (§ 667.5, subd. (b).)

3.

out of his truck and yelled at Marler, "Why did you slap my … truck?" Marler defensively denied slapping the truck, and Gilroy moved from the driver's side of the car and stood next to Marler.

An argument ensued as to whether or not Marler slapped the truck and if there would be a confrontation. Gilroy and defendant walked towards each other. Heated words were exchanged. At some point, defendant went back to his truck. Gilroy followed. Marler's memory was foggy as to the events that followed.

A shoving match ensued between Gilroy and defendant. Defendant punched Gilroy once in the head. Gilroy fell flat and struck the pavement, fracturing his skull. As Gilroy lay on the ground, unconscious and bleeding from his head, defendant jumped back into his truck and "peeled out" of the parking lot. Marler, as well as witnesses in the grocery store and the parking lot, called 911.

The fire department, sheriff, and paramedics responded and rendered aid to Gilroy. An ambulance took Gilroy to the hospital, where he remained unconscious in a coma for about two weeks. The fractures to Gilroy's skull caused irreversible brain damage. Gilroy's condition continued to deteriorate and, on April 5, 2013, his family decided to take him off life support. Gilroy was pronounced dead that day.

On March 29, 2013, law enforcement stopped defendant while he was driving his green pickup truck and arrested him.

### Defense's Case

Anthony Cesero testified he had observed the incident. According to Cesero, when defendant began yelling at Marler, Gilroy angrily confronted defendant. Defendant tried to leave, but Gilroy prevented him from leaving by forcing open the door to defendant's truck. Cesero claimed Gilroy and Marler boxed in defendant before defendant hit Gilroy.

Two Kern County autopsy assistants both testified the doctor who conducted Gilroy's autopsy tended to rush his work. Finally, defendant called Dr. Terri Haddix, an

4.

expert in forensic pathology and neuropathology, to testify.  Dr. Haddix testified she did not agree with the coroner's evaluation of the origin of Gilroy's skull fracture.  She believed the fracture originated on the right side of the head.  According to Dr. Haddix, a single blow to the back of the head could have caused all of Gilroy's injuries.  Thus, Gilroy's injuries could have been caused solely by Gilroy's head hitting the pavement when he fell.  She also testified Gilroy had a blood-alcohol content of 0.279 on the date of the incident.

## ANALYSIS

### I.     The Great Bodily Injury Enhancement Was Properly Attached to Defendant's Conviction for Felony Assault[*]

Defendant initially contends the trial court erred in imposing a great bodily injury enhancement as to count 2.  He contends the enhancement was improperly attached to the assault conviction because the great bodily injury Gilroy sustained was inflicted in the commission of a battery, rather than an assault.  He further contends the enhancement was improper because battery, not assault, caused Gilroy's comatose state.  The Attorney General disagrees, as do we.

#### A.     Great Bodily Injury Occurred in the Commission of the Assault

Defendant contends the great bodily injury enhancement must be stricken because the enhancement occurred during the commission of a battery, rather than an assault.  However, whether great bodily injury occurs "in the commission of" an offense does not necessarily hinge on the technical completion of the underlying crime.

A great bodily injury enhancement pursuant to section 12022.7, subdivision (b) provides, "Any person who personally inflicts great bodily injury on any person … *in the commission of a felony* or attempted felony which causes the victim to become comatose due to brain injury … shall be punished by an additional and consecutive term of imprisonment in the state prison for five years."  (Italics added.)  By enacting section

---

[*]See footnote, *ante*, page 1.

5.

12022.7, the Legislature sought to "deter infliction of serious bodily injury on victims of burglary, robbery and other felonies" (*People v. Johnson* (1980) 104 Cal.App.3d 598, 608), and "to punish more severely those crimes that actually result in great bodily injury" (*People v. Guzman* (2000) 77 Cal.App.4th 761, 765). As such, the Legislature intended section 12022.7 to be applied broadly. (*People v. Cross* (2008) 45 Cal.4th 58, 66, fn. 3.)

Consistent with the Legislature's intent, the phrase "in the commission of a felony" has been broadly construed to include injuries that were inflicted even after the underlying offense was technically completed. For example, in *People v. Jones* (2001) 25 Cal.4th 98, 109 (*Jones*), our Supreme Court held the phrase "in the commission of" had the same meaning under section 12022.3, subdivision (a), a weapons use enhancement, as it does under the felony-murder provisions. The Legislature's expressed intent to deter the use of firearms in the commission of specified felonies required that use to be broadly construed. (*Jones*, at p. 110.) As such, the *Jones* court concluded the use of a firearm within the meaning of the weapons use enhancement during a felony sex crime "may be deemed to occur 'in the commission of' the offense if it occurred *before*, *during*, *or after* the technical completion of the felonious sex act." (*Jones*, at p. 110.) The operative question was whether the sex offense was more culpable because the defendant used a deadly weapon to maintain control of or to threaten the victim. (*Ibid*.)

Although a weapons use enhancement was at issue, rather than a great bodily injury enhancement, *Jones* guides our interpretation of section 12022.7, subdivision (b). Like the weapons use enhancement in *Jones*, the Legislature intended the great bodily injury enhancement to be applied broadly. (*People v. Cross*, *supra*, 45 Cal.4th at p. 66, fn. 3.) Consistent with the Legislature's intent, we interpret "in the commission of" to include crimes which are technically complete when the defendant inflicts great bodily injury on the victim. It follows that while a battery is a consummated assault (*People v.*

6.

*Williams* (2001) 26 Cal.4th 779, 786), great bodily injury may nonetheless be deemed to occur in the commission of an assault.

Here, the record amply supports the conclusion Gilroy's comatose state occurred within moments of defendant's assault: Defendant struck Gilroy, which caused him to fall backward onto the pavement, fracturing his skull and rendering him comatose. Because the assault occurred only moments before Gilroy was injured, we conclude Gilroy's injury may be deemed to have occurred "in the commission of" defendant's assault.

Defendant directs us to several cases to support his assertion that a great bodily injury enhancement may not attach to an assault conviction, including *People v. Arzate* (2003) 114 Cal.App.4th 390 (*Arzate*), *People v. Valdez* (2010) 189 Cal.App.4th 82 (*Valdez*), and *People v. Hawkins* (1993) 15 Cal.App.4th 1373 (*Hawkins*). None of these cases support defendant's assertion.

In *Arzate*, *supra*, 114 Cal.App.4th at page 391, the defendant was convicted of carrying a concealed firearm in a vehicle, assault with a firearm on a peace officer, and attempted murder of a peace officer. In addition, a gun use enhancement and great bodily injury enhancement attached to the defendant's conviction for carrying a concealed firearm. On appeal, the defendant challenged the enhancements, arguing it is logically inconsistent to inflict great bodily injury and use a gun "in the commission of" carrying a *concealed* firearm. (*Id*. at p. 392.)

The appellate court agreed, explaining, "Conceptually, the crime of concealment would seemingly end with the firearm's use and thus exposure. In other words, it seems logically inconsistent to be found guilty of both using the gun and inflicting injury while concealing the same gun within a vehicle." (*Arzate*, *supra*, 114 Cal.App.4th at p. 400.) The court compared the crime of carrying a concealed weapon to crimes such as felony murder, burglary, robbery and kidnapping, and noted the former act is complete with the single passive act of carrying a firearm in a concealed fashion while in a vehicle, but the

7.

latter crimes contemplate additional acts beyond the initial act of entry or taking. (*Id*. at pp. 400-401.) According to the court, "These crimes encompass the further acts of asportation, escaping with the loot, reaching a place of temporary safety and the like" (*id.* at p. 401), making the crimes conceptually different from carrying a concealed firearm, which is complete upon the initial act.

Here, in contrast to *Arzate*, it is not logically inconsistent to inflict great bodily injury in the commission of an assault. Assault and battery lie on a continuum of conduct (*People v. Chance* (2008) 44 Cal.4th 1164, 1170), and to the extent defendant's assault on Gilroy *immediately* preceded his infliction of injury upon Gilroy, the Legislature's purpose in enacting the great bodily injury enhancement supports its imposition. As noted, section 12022.7 must be applied broadly in light of its purpose "'to punish more severely those crimes that actually result in great bodily injury.'" (*People v. Chaffer* (2003) 111 Cal.App.4th 1037, 1045.) Indeed, the enhancement "may be imposed with regard to virtually any felony not specifically listed as an exception" under section 12022.7. (*People v. Sainz* (1999) 74 Cal.App.4th 565, 575.)

Defendant also directs us to *Valdez*, *supra*, 189 Cal.App.4th 82. There, the defendant was convicted of fleeing the scene of an injury accident in violation of Vehicle Code section 20001. (*Valdez*, at p. 85.) The jury also found true a great bodily injury enhancement attached to that conviction. (*Ibid*.) However, the defendant committed the felony (fleeing from an accident) *after* the accident—the point at which great bodily injury was inflicted upon the victim. Because the defendant did not inflict great bodily injury during the commission of the crime, the *Valdez* court struck the section 12022.7 enhancement. (*Id.* at p. 90.)

*Valdez* does not assist defendant. Here, unlike in *Valdez*, the assault occurred immediately preceding defendant's infliction of great bodily injury on Gilroy, and not sometime thereafter.

Finally, defendant relies on *Hawkins*, *supra*, 15 Cal.App.4th 1373. In *Hawkins*, the defendant was convicted of battery, and a serious bodily injury enhancement attached to the crime was found true. (*Id.* at p. 1374.) The appellate court held the trial court erred in imposing the section 12022.7 enhancement, since great bodily injury is an element of battery (§ 243, subd. (d)), and a great bodily injury enhancement cannot attach to a felony where infliction of great bodily injury is an element of that offense. (*Hawkins*, at pp. 1375-1376; § 12022.7, subd. (g).) Here, on the other hand, the great bodily injury enhancement attached to defendant's conviction for assault, and great bodily injury is not an element of felony assault (§ 245). It is precisely for this reason the enhancement may attach to a conviction for assault. Thus, defendant's reliance on *Hawkins* is misplaced.

Defendant's claim that a great bodily injury enhancement may not attach to an assault conviction is unpersuasive. We are directed to no authority precluding imposition of the enhancement on a felony assault conviction. Moreover, such a conclusion cannot be reasonably drawn based on the Legislature's intent the enhancement be broadly applied. In light of the fact defendant's assault on Gilroy occurred only moments before Gilroy was grievously injured, we conclude the great bodily injury occurred "in the commission of" the assault.

**B.    Great Bodily Injury Applies to Felonies Whose Elements Do Not Require Touching**

Defendant further contends it is illogical to conclude great bodily injury may result from an assault, because assault does not require touching as an element of the offense. We are not persuaded.

Burglary (§ 459) requires only the intent to commit a theft or felony offense, but great bodily injury may attach to a burglary conviction. (*People v. Mixon* (1990) 225 Cal.App.3d 1471, 1487-1488.) The enhancement may also attach to a conviction for receipt of stolen property (*People v. Johnson*, *supra*, 104 Cal.App.3d at p. 608), but touching is not an element of receipt of stolen property. The enhancement attaches where

9.

great bodily injury occurs *in the commission of* the underlying felony offense, not because the underlying offense actually *causes* the victim's injuries. "[N]either the application of physical force, nor affirmative action by the defendant is necessarily required to support a section 12022.7 [great bodily injury] enhancement." (*People v. Elder* (2014) 227 Cal.App.4th 411, 419.)

## II. The Great Bodily Injury Enhancement Attached to Count 2 Was Not Barred by Section 12022.7, Subdivision (g)

Defendant contends a great bodily injury enhancement cannot apply to his conviction for felony assault because he was also convicted in another count of involuntary manslaughter. We disagree.

Section 12022.7, subdivision (b) provides the following, in relevant part:

> "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony which causes the victim to become comatose due to brain injury or to suffer paralysis of a permanent nature shall be punished by an additional and consecutive term of imprisonment in the state prison for five years."

However, subdivision (g) of the section 12022.7 states: "This section shall not apply to murder or manslaughter or a violation of Section 451 [(arson)] or 452 [(unlawfully causing a fire)]. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." Thus, the great bodily injury enhancement may not attach to certain crimes, including manslaughter. The issue here is whether the enhancement may attach to a nonprohibited felony, such as assault, where the defendant is found guilty of manslaughter in a separate count.

In *People v. Cook*, *supra*, 60 Cal.4th 922, our Supreme Court considered whether a sentence for gross vehicular manslaughter of one victim may be enhanced for the defendant's infliction of great bodily injury on other victims. There, the defendant was involved in an automobile accident caused by her speeding and reckless driving, causing the death of three persons and seriously injuring a fourth person. (*Id.* at p. 924.) The defendant was convicted of three counts of gross vehicular manslaughter, one count for

each of the deceased victims. As to the first count of manslaughter, the jury also found true three enhancement allegations that the defendant personally inflicted great bodily injury in the commission of the offense. Two of the great bodily injury enhancements related to the victims who died and were the subject of the other manslaughter convictions. (*Id.* at p. 925.)

The court struck punishment for the great bodily injury enhancements for the victims who died. (*People v. Cook*, *supra*, 60 Cal.4th at p. 925.) The defendant appealed, contending section 12022.7, subdivision (g) prohibited *all* of the great bodily injury enhancements. (*Cook*, at p. 925.) Our Supreme Court agreed.

The *Cook* court explained that a murder or manslaughter conviction may not be enhanced under section 12022.7, subdivision (g) for inflicting great bodily injury on the victim who is the subject of that conviction. (*People v. Cook*, *supra*, 60 Cal.4th at p. 925.) *Cook* then examined the specific question of "when, if ever, a manslaughter conviction may be enhanced for the infliction of great bodily injury on *other* victims during the commission of the manslaughter." (*Ibid.*) The court concluded section 12022.7, subdivision (g) means what it says: "[G]reat bodily injury enhancements simply do not apply to murder or manslaughter." (*Cook*, at p. 935.) In a final footnote, the court stated: "We express no opinion regarding the question, not presented here, of whether and, if so, how great bodily injury enhancements may attach to other crimes for a defendant who is convicted of murder or manslaughter as well as those other crimes." (*Id.* at p. 938, fn. 3.)

This case addresses the question *Cook* declined to answer. To determine whether section 12022.7 prohibits imposition of the great bodily injury enhancement as to nonprohibited felonies contemporaneously charged with a prohibited felony, such as manslaughter, we first turn to the plain language of subdivision (g) of section 12022.7. "When construing a statute, our job is 'simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has

been inserted ….'" (*People v. Bell* (2015) 241 Cal.App.4th 315, 321, quoting Code Civ. Proc., § 1858.) We are to follow the Legislature's intent as expressed by the plain meaning of the actual words of a statute, and to give the words ""'"their usual and ordinary meaning."'"" (*People v. Loeun* (1997) 17 Cal.4th 1, 9.) If there is no ambiguity in the statute's language, we presume the Legislature intended that meaning and that plain meaning controls. (*Ibid.*)

The plain language of subdivision (g) of section 12022.7 provides the following: "This section shall not apply to murder or manslaughter or a violation of Section 451 [(arson)] or 452 [(unlawfully causing a fire)]. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." Here, the offense enhanced by section 12022.7 was not defendant's conviction for involuntary manslaughter, but his conviction for assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). Assault is not one of the four exempted offenses listed in subdivision (g) of section 12022.7, nor is great bodily injury, or injury for that matter, an element of the crime of assault. (§§ 12022.7, subd. (g), 245.) Thus, this matter is distinguishable from *Cook*, where the great bodily injury enhancements at issue were actually attached to the defendant's manslaughter convictions.

The Attorney General directs us to *People v. Martinez* (2014) 226 Cal.App.4th 1169 (*Martinez*), a pre-*Cook* decision by the Sixth District Court of Appeal, which considered essentially the same issue presently before this court. In *Martinez*, the defendant was convicted by bench trial of involuntary manslaughter and three counts of furnishing a controlled substance. (*Martinez*, *supra*, at p. 1172.) The court also found true a great bodily injury enhancement attached to two of the controlled substance convictions, which applied to the same victim of the manslaughter. (*Ibid.*) Before trial, the defendant had agreed to waive his section 654 rights as to sentencing on the manslaughter count and the great bodily injury enhancement in exchange for dismissal of a murder charge and a stipulated lid on his sentence. (*Martinez*, at pp. 1172, 1179-1180.)

12.

On appeal, the defendant challenged the trial court's imposition of the great bodily injury enhancement as to the controlled substance convictions. (*Id.* at p. 1180.) He claimed the court had no authority to impose the enhancements because they were premised on the victim's death. The defendant was already convicted and punished for the victim's death based on his conviction for manslaughter. (*Ibid*.) The Sixth Appellate District rejected the defendant's argument, explaining neither the plain language of section 12022.7 nor case law supported such a broad interpretation of the prohibition under subdivision (g) of section 12022.7. (*Martinez*, at p. 1184.)

We agree with *Martinez*. The plain language of section 12022.7, subdivision (g) appears to prohibit the enhancement as it applies to murder, manslaughter, arson, unlawfully causing a fire, or an offense whose elements include the infliction of great bodily injury. The statute is silent as to whether it applies to other offenses brought within the same criminal proceeding.

Defendant concedes *Martinez* contravenes his argument, but he contends *Cook* and *Hale v. Superior Court* (2014) 225 Cal.App.4th 268 support his conclusion. *Cook*, however, does not assist defendant because *Cook* declined to reach the issue presently before this court. Defendant directs us to *Hale* for the proposition "[t]he statutory purpose of the Legislature's [great bodily injury] enhancement regime is not to maximize punishment under every pleading artifice a prosecutor can devise, but instead to 'deter[] the use of excessive force and the infliction of *additional harm beyond that inherent in the crime itself*.'" (*Hale*, *supra*, at p. 275).

We agree a defendant should not be subject to additional punishment merely because section 12022.7, subdivision (g), as written, does not preclude application of the enhancement to a nonprohibited felony, where a defendant is convicted of manslaughter, or another prohibited felony, in the same proceeding. However, section 654 precludes the imposition of multiple punishment based on a single act, and here, the trial court stayed defendant's sentence for involuntary manslaughter pursuant to section 654. Thus,

13.

defendant has not actually been punished twice. We conclude defendant's claim is without merit.

## DISPOSITION

The judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment with service to all appropriate agencies to reflect defendant's conviction of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)).

_____
PEÑA, J.

WE CONCUR:


_____
FRANSON, Acting P.J.


_____
SMITH, J.

14.