**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDUARD SAFARYAN,

*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 16-74039

Agency No.
A075-726-744

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 9, 2019
Pasadena, California

Filed September 17, 2020

Before:  Carlos T. Bea, Daniel P. Collins, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Collins

## SUMMARY[*]

### Immigration

Denying Eduard Safaryan's petition for review of a decision of the Board of Immigration Appeals, the panel: 1) deferred to *Matter of Wu*, 27 I. & N. Dec. 8 (BIA 2017), in which the BIA held that a conviction under California Penal Code § 245(a)(1), which proscribes certain aggravated forms of assault, is categorically a crime involving moral turpitude; and 2) concluded that Safaryan was inadmissible based on his § 245(a)(1) conviction, and therefore, ineligible for adjustment of status absent a waiver.

In *Ceron v. Holder*, 747 F.3d 773 (9th Cir. 2014) (en banc), this court overruled the precedent on which the BIA had relied in concluding that § 245(a)(1) is a crime involving moral turpitude, concluded that the issue was now an open one in this circuit, and remanded to the BIA to decide the issue in the first instance. The BIA did not issue a published decision in *Ceron*, but while Safaryan's petition for review was pending in this court, the BIA issued a published decision in *Matter of Wu*, holding that § 245(a)(1) is categorically a crime involving moral turpitude.

The panel concluded that *Matter of Wu* was entitled to deference under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). First, the panel reviewed de novo the agency's articulation of the elements of the offense, noting that, at the time of Safaryan's offense,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 245(a)(1) imposed criminal punishment on "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury."

The panel also summarized the relevant California law concerning the actus reus and mens rea of the offense. As to actus reus, the panel explained that simple assault does not require actual harm or even physical contact, but that the aggravators in § 245(a)(1) add an additional element, requiring either "force likely to produce great bodily injury" or the use of a "deadly weapon or instrument." As to mens rea, the panel noted that the California Supreme Court has held that assault requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.

Next, the panel considered whether § 245(a)(1) falls within the generic federal definition of a crime involving moral turpitude. The panel explained that, in *Matter of Wu*, the BIA concluded that the combination of actus reus and mens rea required by § 245(a)(1) reflects the sort of enhanced reprehensibility that qualifies as morally turpitudinous and that the BIA expressly considered the issues raised by the Ninth Circuit in *Ceron*. Specifically, *Ceron* approvingly noted that the BIA held in *Matter of Medina*, 15 I. & N. Dec. 611 (BIA 1976), that the combination of a "deadly weapon" and "recklessness" was sufficient to establish that an Illinois statute was a crime involving moral turpitude. The panel concluded that the BIA, in *Matter of Wu*, correctly noted two important differences between § 245(a)(1) and the Illinois statute, and that the BIA permissibly concluded that neither distinction

warranted a different conclusion on the ultimate question of moral turpitude.

Because the BIA's decision in *Matter of Wu* correctly framed the legal issues and reached a reasonable conclusion in addressing the issues this court identified in *Ceron*, the panel concluded that the decision was entitled to *Chevron* deference. Accordingly, the panel held that the BIA correctly determined that Safaryan's conviction under § 245(a)(1) was for a crime involving moral turpitude and that he was therefore inadmissible.

Finally, the panel addressed Safaryan's contention that, even if he is inadmissible, the BIA erred in upholding the IJ's denial of a waiver of inadmissibility under § 212(h) of the Immigration and Nationality Act. The panel concluded that it lacked jurisdiction to consider Safaryan's challenges to the denial of the § 212(h) waiver, explaining that he failed to raise a cognizable legal or constitutional question concerning that determination.

## COUNSEL

Carlos R. Barrios (argued), Los Angeles, California; Areg Kazaryan, Glendale, California; for Petitioner.

Robert D. Tennyson, Jr., Ph.D. (argued), Trial Attorney; Justin Markel, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

COLLINS, Circuit Judge:

This case requires us to decide whether California Penal Code § 245(a)(1), which proscribes certain aggravated forms of assault, is categorically a "crime involving moral turpitude" for purposes of the immigration laws. We were presented with precisely that issue in *Ceron v. Holder*, 747 F.3d 773 (9th Cir. 2014) (en banc), but we declined to decide it, holding instead that the Board of Immigration Appeals ("BIA") should be given the opportunity "to consider the issue in the first instance." *Id.* at 784. We explained, however, that after the BIA decided that question, we would then "have to decide whether to defer to the BIA's decision." *Id.* The BIA subsequently held in a published decision that § 245(a)(1) is categorically a crime involving moral turpitude. *Matter of Wu*, 27 I. & N. Dec. 8 (BIA 2017). We conclude that *Matter of Wu* is consistent with *Ceron* and entitled to deference. Consequently, the petitioner in this case—who was convicted of a violation of § 245(a)(1) in 2006—was properly ordered removed, and we deny his petition for review.

## I

## A

On July 14, 1999, Eduard Safaryan, a native and citizen of Armenia, arrived in Los Angeles on a tourist visa authorizing him to remain in the United States until January 13, 2000. Safaryan overstayed his visa, however, and in December 2000, he married a lawful permanent resident, to whom he is still married. Their first child was born in April 2001, their second child a year later, and their third child in

2012. In April 2002, Safaryan's wife became a naturalized U.S. citizen.

Meanwhile, in November 2000, the Government served Safaryan with a notice to appear alleging that he was removable under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA") for having remained in the country after the expiration of his visa. On March 21, 2001, Safaryan appeared in Immigration Court in Los Angeles and conceded that he was removable as charged. Although he had applied for asylum, withholding of removal, and relief under the Convention Against Torture, he ultimately withdrew those applications after his wife was naturalized and instead sought adjustment of status to that of a lawful permanent resident. Safaryan's removal proceedings were continued for several years until his application for adjustment of status was finally ready to be heard before an Immigration Judge ("IJ") in early 2005. After several hearings and multiple continuances to allow Safaryan to obtain appropriate documents, the IJ ultimately denied Safaryan's application in June 2005, ruling that he had failed to satisfy the financial-support requirements for obtaining adjustment of status. In February 2007, the BIA upheld the IJ's ruling, but after Safaryan filed his opening brief in this court, the Government moved to remand the case back to the BIA. This court granted that motion in October 2010.

**B**

While Safaryan's first appeal to the BIA was pending, he was arrested on October 30, 2005 in connection with an apparent road-rage incident. According to the police report, another vehicle inadvertently cut off Safaryan's car as both were transitioning from the westbound 101 freeway to the northbound 405 freeway in the Sherman Oaks section of Los Angeles. After following the other vehicle for a few miles,

Safaryan allegedly swerved his car towards it several times and then intentionally struck the vehicle, which consequently collided into the center divider that separates the freeway's northbound and southbound traffic. After Safaryan exited the freeway, he or his wife (who was with him and their children in the car) called the police and claimed that she had been driving the car and that she had been the victim of a hit-and-run. After likewise initially insisting that his wife had been the driver, Safaryan soon thereafter admitted that he had been at the wheel when the collision occurred, but he insisted that the other vehicle had recklessly hit him.

Safaryan was charged with three counts: assault with a deadly weapon other than a firearm in violation of California Penal Code § 245(a)(1); assault by means likely to produce great bodily injury in violation of the same provision;[1] and filing a false report of a crime in violation of California Penal Code § 148.5(a). On February 9, 2006, pursuant to a plea agreement, Safaryan pleaded no contest to the first count, assault with a deadly weapon other than a firearm. Safaryan was sentenced to three years of probation, with the requirement that he spend the first 270 days in jail. Safaryan ended up serving only five days in jail.

## C

In February 2011, after this court's remand, the BIA vacated its earlier 2007 decision in Safaryan's case and remanded the matter to the IJ. Back before the IJ, the

---

[1] Effective 2012, § 245(a)(1) was amended by moving the distinct offense of assault by means likely to produce great bodily injury into a new separate subsection, § 245(a)(4). *See People v. Lamb*, 213 Cal. Rptr. 3d 467, 468 n.2 (Cal. Ct. App. 2017).

Government argued that Safaryan's intervening conviction under § 245(a)(1) constituted a "crime involving moral turpitude," which now rendered him "inadmissible" under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), and therefore ineligible for adjustment of status in the absence of a waiver. *See* 8 U.S.C. §§ 1182(h), 1255(a). The IJ agreed with the Government's position and also declined to grant a waiver, concluding that Safaryan had failed to show the requisite exceptional and extremely unusual hardship to him or his qualifying relatives. Accordingly, the IJ ordered Safaryan removed to Armenia.

In an unpublished decision, the BIA upheld the IJ's removal order. The BIA held that, in light of two key factors, the IJ correctly concluded that California Penal Code § 245(a)(1) is a crime involving moral turpitude. First, because § 245(a)(1) requires the willful commission of an "inherently dangerous physical act in the presence of another person" with "actual knowledge of all facts necessary to establish" that the act "would naturally and probably result in a battery upon the other person," the scienter required under § 245(a)(1) was greater than "mere recklessness or criminal negligence." Second, "the use of a deadly weapon is an aggravating factor that elevates an assault to a crime involving moral turpitude." As a result, the BIA concluded that Safaryan's conviction rendered him inadmissible, and ineligible for adjustment of status, absent a waiver. The BIA further held that Safaryan's request for such a waiver was properly denied, and accordingly, it dismissed Safaryan's appeal. This timely petition for review followed.

## II

An alien seeking to adjust his or her status to that of a lawful permanent resident must be "admissible to the United States for permanent residence." 8 U.S.C. § 1255(a).

Subject to certain enumerated exceptions not relevant here, "any alien convicted of . . . a crime involving moral turpitude . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Accordingly, the BIA properly held that, if Safaryan's conviction under California Penal Code § 245(a)(1) constitutes a crime of moral turpitude, then he is ineligible for adjustment of status absent a waiver under INA § 212(h). *See* 8 U.S.C. § 1182(h). The question before us, then, is whether the BIA was correct in its further conclusion that a violation of § 245(a)(1) is categorically a "crime involving moral turpitude" under the INA. We hold that it was.

## A

We have described the statutory phrase "moral turpitude" as "perhaps the quintessential example of an ambiguous phrase." *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc). Although that might suggest that we should therefore give deference under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to the BIA's *legal* construction of that phrase, that particular question of deference is ultimately of "no practical significance," because "we have noted that our understanding [of the phrase] does not differ materially from the [BIA's]." *Marmolejo-Campos*, 558 F.3d at 910 (citations and internal quotation marks omitted); *see also id.* (noting broad agreement as to the "general understanding of the term 'moral turpitude'").

The BIA's generalized conception of morally turpitudinous crimes draws on familiar criminal-law concepts under which the wrongfulness of an act is a function of both the *nature* of the underlying conduct (the actus reus) and the *state of mind* with which it is performed (the mens rea). *See Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 828 n.2 (BIA 2016) ("[A] crime involving moral

turpitude is generally defined as a crime that encompasses a *reprehensible act* with some form of *scienter*." (emphasis added)); *see also Moran v. Barr*, 960 F.3d 1158, 1161–62 (9th Cir. 2020); *Marmolejo-Campos*, 558 F.3d at 910. Because "turpitude" denotes "[i]nherent baseness or vileness of principle, words, or actions" or "depravity," Turpitude, Webster's New International Dictionary (2d ed. 1934), a "crime involving moral turpitude" denotes an elevated level of wrongfulness that bespeaks some measure of moral depravity on the part of the perpetrator.

In determining whether a crime involves this sort of enhanced reprehensibility, "[w]e consider the actus reus and the mens rea 'in concert to determine whether the behavior they describe is sufficiently culpable to be labeled morally turpitudinous.'"    *Moran*, 960 F.3d at 1162 (quoting *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1214 (9th Cir. 2013)).  As to the underlying conduct defined by an offense, the "'presence of an aggravating factor,' such as 'serious physical injury or the use of a deadly weapon,'" *Ceron*, 747 F.3d at 783 (quoting *In re Solon*, 24 I. & N. Dec. 239, 245 (BIA 2007)), "can transform a crime that does not involve moral turpitude into one that does," *Moran*, 960 F.3d at 1162.  Likewise, a mental state that reflects "'a vicious motive or a corrupt mind'" may contribute to a conclusion that a particular crime is morally turpitudinous. *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir. 2012) (quoting *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999)); *see also Moran*, 960 F.3d at 1161 ("Fraudulent crimes always involve moral turpitude.").

Both we and the BIA have recognized that the overall assessment of the reprehensibility of a crime's actus reus and mens rea involves a sliding scale, so that "a greater required showing in one aspect of the criminal offense can

accommodate a lesser required showing in another." *Altayar v. Barr*, 947 F.3d 544, 554 (9th Cir. 2020); *see also Ceron*, 747 F.3d at 783 ("'[A]s the level of conscious behavior decreases, *i.e.*, from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude.'" (quoting *In re Solon*, 24 I. & N. Dec. at 242)). But there must be some minimum level of reprehensibility *both* as to mens rea and as to actus reus. Thus, "'where no conscious behavior is required'" to convict, "'there can be no finding of moral turpitude, regardless of the resulting harm.'" *Id.* (quoting *In re Solon*, 24 I. & N. Dec. at 242). And, conversely, we doubt that merely driving a few miles over the posted speed limit could ever be considered turpitudinous, even if the offense required a willful intent and was classified as a misdemeanor.

We have held that the BIA is entitled to *Chevron* deference when it issues a precedential decision applying this sliding scale in determining whether a *particular* offense "constitutes a crime involving moral turpitude," *Ceron*, 747 F.3d at 784, because "the BIA has expertise in that task," *id.* at 778. We have likewise applied such deference when the BIA issues a "subsequent unpublished order" relying on such a decision. *See Marmolejo-Campos*, 558 F.3d at 911. Accordingly, when reviewing such a BIA precedential decision, we must uphold the BIA's determination that a given offense is a crime involving moral turpitude if it "is based on a permissible construction," *Chevron*, 467 U.S. at 843, of the phrase "crime involving moral turpitude." With this legal framework in mind, we turn to the specific question whether California Penal Code § 245(a)(1) is a crime involving moral turpitude.

**B**

In answering that question, we do not write on a clean slate. We previously confronted this exact question in *Ceron*, where we reviewed an unpublished 2008 decision of the BIA that held—based on published Ninth Circuit and BIA precedent—that California Penal Code § 245(a)(1) *is* a crime involving moral turpitude. 747 F.3d at 777.**²** We concluded, however, that the precedent on which the BIA relied had been "undermined" by subsequent developments in "both federal law and state law." *Id*. at 780. In particular, we held that the reasoning in that precedent was difficult to square with "today's categorical analysis," under which an offense is not a crime involving moral turpitude unless "'the *full range of conduct* covered by the state statute'" satisfies the federal definition of a "crime involving moral turpitude." *Id*. at 780 (emphasis added) (citation omitted). We also noted that the precedent cited by the BIA did not take into account subsequent California caselaw that had "only recently defined with precision the requisite mental state for assault." *Id*. at 781. We therefore explicitly overruled the precedent on which the BIA relied, and finding no other applicable precedent addressing whether § 245(a)(1) was a crime involving moral turpitude, we concluded that the issue was now an open one in this circuit. *Id*. at 781–82 (overruling in relevant part *Carr v. INS*, 86 F.3d 949 (9th Cir. 1996); *Gonzales v. Barber*, 207 F.2d 398 (9th Cir. 1953), *aff'd on other grounds*, 347 U.S. 637 (1954); *Matter of G–R–*, 2 I. & N. Dec. 733 (BIA 1946, AG 1947)). Rather

---

**²** As in this case, the petitioner in *Ceron* was convicted only under the clause of the then-existing version of § 245(a)(1) that proscribed assault with a deadly weapon other than a firearm and not under the separate clause addressing assault by "means of force likely to produce great bodily injury." 747 F.3d at 776 n.1.

than resolve that open question ourselves, we held in *Ceron* that, in light of the deference ordinarily due to such BIA determinations, the agency should be given the "first opportunity to decide" it. *Id*. at 784. We therefore granted Ceron's petition and "remand[ed] to the BIA to determine in the first instance whether California Penal Code section 245(a)(1) categorically constitutes a crime involving moral turpitude." *Id*. at 785. In doing so, we "reiterate[d] that our level of deference will depend on whether the BIA publishes its decision." *Id*.

The BIA, however, never issued a published decision on remand in *Ceron*, nor did it do so in Safaryan's case. Instead, while Safaryan's petition for review was pending before this court, the BIA issued a published decision in *Matter of Wu*, 27 I. & N. Dec. 8 (BIA 2017), holding that California Penal Code § 245(a)(1) is a crime involving moral turpitude. In the case before us, the parties have briefed the matter on the premise that, if we determine that *Matter of Wu* is entitled to *Chevron* deference, then *Matter of Wu* governs this case and renders Safaryan inadmissible. At oral argument, Safaryan explicitly reiterated that view. Given the parties' agreement on this point, as well as the fact that *Matter of Wu*'s reasoning in resolving a long-unsettled issue of law substantially overlaps with the more abbreviated reasoning of the BIA in Safaryan's case, we perceive no issue of improper retroactivity in applying *Matter of Wu* here. *See Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982); *see also Ceron*, 747 F.3d at 780–84 (noting that the question of whether various aggravated assaults under California law were crimes of moral turpitude had been the subject of conflicting decisions). For the same reasons, we also see no need to pointlessly remand the matter to the BIA so that it can formally invoke *Matter of Wu* in this case. *Cf. Morgan Stanley Capital Grp. v. Public Util. Dist. No. 1*,

554 U.S. 527, 545 (2008) ("'To remand would be an idle and useless formality. [*SEC v.*] *Chenery* [*Corp*, 318 U.S. 80 (1943),] does not require that we convert judicial review of agency action into a ping-pong game.'" (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766–67 n.6 (1969) (plurality opinion)). We are thus squarely presented with the issue the en banc court framed in *Ceron*—namely, whether we should give deference to the BIA's published post-*Ceron* decision holding that a violation of California Penal Code § 245(a)(1) is a crime involving moral turpitude. For the reasons set forth below, we answer that question in the affirmative.

## C

## 1

The first step in determining whether a crime involves moral turpitude is "'to identify the elements of the statute of conviction.'" *Ceron*, 747 F.3d at 778 (quoting *Castrijon-Garcia*, 704 F.3d at 1208). Because the agency "lacks expertise in identifying the elements of state statutes," we review the agency's articulation of the elements de novo. *Id.*

At the time of Safaryan's offense, § 245(a)(1) imposed criminal punishment on "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." Cal. Penal Code § 245(a)(1) (2005).[3] In *Matter of Wu*, the BIA appropriately

---

[3] As noted earlier, effective in 2012, § 245(a)(1) was amended by moving the clause involving "force likely to produce great bodily injury" to a new subsection, § 245(a)(4). *See supra* note 1. In addressing the pre-2012 version, the BIA in *Matter of Wu* could have chosen to apply a modified categorical approach and to address only the *relevant* clause

relied on the relevant California criminal pattern jury instruction in describing, as follows, the elements of a violation of § 245(a)(1):

> (1) the defendant did an act that by its nature would directly and probably result in the application of force to a person, using either (a) deadly weapon or instrument, or (b) force likely to produce great bodily injury to another; (2) the defendant did the act willfully; and (3) when the defendant acted, he or she (a) was *aware of facts* that would lead a reasonable person to realize that his or her act by its nature would directly and probably result in the application of force to someone and (b) had the present ability to apply such force.

*Matter of Wu*, 27 I. & N. Dec. at 12 (citing Judicial Council of California, Criminal Jury Instructions No. 875). Thereafter, in the course of analyzing whether § 245(a)(1) is a crime involving moral turpitude, the BIA properly elaborated on these elements, as necessary, by drawing upon relevant decisions of the California Supreme Court and this court. *See* 27 I. & N. Dec. at 12–15. Before turning to that

---

under which Safaryan was convicted. *See Ceron*, 747 F.3d at 776 n.1 (holding that the former version of § 245(a)(1) was divisible and limiting the court's analysis only to the relevant clause). But the BIA elected not to do so and instead held that the broader provision is categorically a crime involving moral turpitude. *Matter of Wu*, 27 I. & N. Dec. at 11–15. In reviewing that decision, we apply the same approach, and we therefore consider both clauses of the former statute. As a result, our decision upholding the BIA's determination as to the prior version of § 245(a)(1) is necessarily dispositive of both § 245(a)(1) and § 245(a)(4) as currently codified.

"moral turpitude" analysis, we again summarize, as we did in *Ceron*, the relevant law concerning the actus reus and mens rea required to establish a violation of § 245(a)(1).

As to the actus reus, California law defines a simple "assault" as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240; *see also Matter of Wu*, 27 I. & N. Dec. at 12 (quoting § 240). We have held that "'violent injury' . . . require[s] only 'the least touching' that is unconsented or otherwise wrongful; such touching 'need not be violent or severe,'" *United States v. Grajeda*, 581 F.3d 1186, 1192 (9th Cir. 2009) (quoting *People v. Colantuono*, 865 P.2d 704, 709 n.4 (Cal. 1994)). Moreover, because an assault is an *attempt* to commit such a "violent injury," it "does not require actual harm or even physical contact." *Ceron*, 747 F.3d at 779; *see also Matter of Wu*, 27 I. & N. Dec. at 10–11. The aggravators in § 245(a)(1), however, add an additional element, requiring either "force likely to produce *great bodily injury*" (as opposed to the "least touching") or the use of a "deadly weapon or instrument." Cal. Penal Code § 245(a)(1) (2011) (emphasis added). A "deadly weapon or instrument" is an item "'extrinsic to the human body'" that "'is used in such a manner as to be capable of producing death or great bodily injury.'" *Ceron*, 747 F.3d at 778–79 (quoting *People v. Aguilar*, 945 P.2d 1204, 1210 (Cal. 1997)); *see also Matter of Wu*, 27 I. & N. Dec. at 15 n.11 (quoting *Aguilar*).

As to § 245(a)(1)'s mens rea, we noted in *Ceron* that the California Supreme Court had clarified the mental state required for assault in *People v. Williams*, 29 P.3d 197 (Cal. 2001). *See Ceron*, 747 F.3d at 779; *see also Matter of Wu*, 27 I. & N. Dec. at 12–14 (similarly analyzing *Williams*).

Specifically, the state high court described the mental state required for assault as follows:

> [A] defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur.

*Williams*, 29 P.3d at 203. The court stressed that "[a]ssault is still a general intent crime" and "does not require a specific intent to injure the victim." *Id*. The court also specifically rejected the view that the mens rea for assault could be satisfied by "mere recklessness or criminal negligence." *Id*.; *see also Grajeda*, 581 F.3d at 1195. Assault under California law therefore "'requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.'" *Ceron*, 747 F.3d at 779 (quoting *Williams*, 29 P.3d at 204). As our discussion below further confirms, *see infra* at 18–22, the BIA's decision in *Matter of Wu* faithfully describes the mens rea for § 245(a)(1), as set forth in *Williams* and as further elaborated in *Ceron* and *Grajeda*. *See* 27 I. & N. Dec. at 12–14 (summarizing § 245(a)(1)'s mens rea requirements in light of these decisions).

## 2

Having described the elements of § 245(a)(1), our next task is to ask whether that offense "'fall[s] within the generic federal definition of a crime involving moral turpitude,'" using the understanding of "moral turpitude" discussed

earlier. *Moran*, 960 F.3d at 1161 (citation omitted); *see supra* at 9–11. In doing so, we apply a "categorical" approach that "require[s] determining whether the elements of the offense of conviction (as opposed to the facts underlying the conviction) constitute a crime involving moral turpitude." *Altayar*, 947 F.3d at 549. For § 245(a)(1) to qualify as a crime involving moral turpitude under this categorical approach, "'the full range of conduct encompassed by the criminal statute'" must "'constitute[] a crime of moral turpitude.'" *Id.* (citations omitted). And as we have explained, we give deference to the BIA's determinations at this second step, at least where, as here, it has issued a precedential decision. *See supra* at 11.

In *Matter of Wu*, the BIA correctly recognized that the question of "moral turpitude" involves the application of a sliding scale in which the "'building together'" of a sufficiently reprehensible actus reus and a sufficiently culpable mens rea may confirm that a given crime is turpitudinous. 27 I. & N. Dec. at 15 (citation omitted); *see supra* at 9–11. That is, because the "'need for, and the nature of, any aggravating factor'" concerning the underlying conduct "'is affected by the mental state required for the conviction,'" *Ceron*, 747 F.3d at 783 (citation omitted), the relevant inquiry requires "weigh[ing] the level of danger posed by the perpetrator's conduct along with his or her degree of mental culpability in committing that conduct," *Matter of Wu*, 27 I. & N. Dec. at 11. Thus, while an aggravating factor such as "the use of a deadly weapon" may not *alone* be sufficient, the *combination* of such a factor with a sufficiently culpable mental state can be enough to confirm that an offense is categorically a crime involving moral turpitude. *Ceron*, 747 F.3d at 783–84. Applying this analysis, the BIA concluded that the combination of actus reus and mens rea required by § 245(a)(1) reflects the sort of

enhanced reprehensibility that qualifies as morally turpitudinous.  27 I. & N. Dec. at 9.

In reaching this conclusion, the BIA expressly "considered the issues raised by the Ninth Circuit in *Ceron*." *Id*. at 16.  As *Ceron* approvingly noted, the BIA had previously held in *Matter of Medina*, 15 I. & N. Dec. 611 (BIA 1976), that the combination of the use of a "deadly weapon" and a mental state of criminal "*recklessness*" was sufficient to establish that an Illinois statute criminalizing such an aggravated assault was categorically a crime involving moral turpitude.  747 F.3d at 784.  The BIA in *Matter of Wu* therefore properly framed the issue here as whether the elements of § 245(a)(1) sufficiently differ from those of the Illinois statute at issue in *Matter of Medina* to warrant a different conclusion.  27 I. & N. Dec. at 11–15; *see also Ceron*, 747 F.3d at 784 (similarly framing the issue). The BIA correctly noted that there were two important differences between § 245(a)(1) and the Illinois statute, and it permissibly concluded that neither distinction warranted a different conclusion on the ultimate question of moral turpitude.

**a**

First, the BIA followed *Ceron* in noting that, unlike the Illinois aggravated assault statute in *Matter of Medina*, § 245(a)(1)'s mens rea "does not require that a perpetrator *subjectively perceive the risk* posed by his or her conduct." 27 I. & N. Dec. at 12 (emphasis added) (citing *Ceron*, 747 F.3d at 784).  Rather, § 245(a)(1) only requires that, in addition to having the "'general intent'" to commit the assaultive act, the defendant "'*must be aware of the facts* that would lead a *reasonable person* to realize that a battery would *directly, naturally and probably* result from his conduct.'"   *Id*. at 13 (second emphasis added) (quoting

*Williams*, 29 P.3d at 203). Thus, although the defendant need not be subjectively aware that a *battery* will occur, the person must be subjectively aware of *the facts that objectively establish* that a battery will likely result. *Id.* As we explained in *Ceron*, under § 245(a)(1), the "offender must commit an intentional act and must have knowledge of the circumstances that would lead a reasonable person to perceive the risk, but the offender's subjective appreciation of the risk is not required." 747 F.3d at 784.

As the BIA correctly observed, both the California Supreme Court and this court have squarely held that the resulting scienter required under § 245(a)(1) is "greater than recklessness and criminal negligence." 27 I. & N. Dec. at 14; *see Williams*, 29 P.3d at 203 ("[M]ere recklessness or criminal negligence is still not enough, because a jury cannot find a defendant guilty of assault based on facts he should have known but did not know." (citations and footnote omitted)); *Grajeda*, 581 F.3d at 1195 (concluding that § 245(a)(1)'s mens rea is properly understood as requiring "proof of an intentional 'violent act'" in which "the use of force [is] not merely accidental, as in an automobile accident stemming from drunk or reckless driving"); *see also United States v. Jimenez-Arzate*, 781 F.3d 1062, 1065 (9th Cir. 2015) ("*Ceron* does not clearly indicate a different interpretation of the mens rea requirement for § 245(a)(1) than that set forth in *Grajeda*."). Because more than negligence is required under § 245(a)(1), the BIA correctly concluded that the California statute did not fall within the BIA's bright-line rule that "an assault statute prohibiting a perpetrator from causing injury to another 'with *criminal negligence*' does not define a crime involving moral turpitude." *Matter of Wu*, 27 I. & N. Dec. at 11 (quoting *Matter of Perez-Contreras*, 20 I. & N. Dec. 615, 618–19 (BIA 1992)) (emphasis added).

The BIA further held that, at least in the context of an assault involving the use of a deadly weapon or force likely to produce great bodily injury, the resulting mens rea is sufficiently culpable that any difference between the California and Illinois statutes did not warrant a different conclusion from *Matter of Medina*.  As the BIA explained, "the result should be no different for a person who willfully commits such dangerous conduct"—*i.e.*, assault with a deadly weapon or with force likely to produce great bodily harm—"with knowledge of all the facts that make it dangerous than it is for one who commits the conduct with the knowledge that it is dangerous."  27 I. & N. Dec. at 14. We cannot say that the BIA's conclusion is unreasonable. Because the defendant's commission of a violent act by use of a "deadly weapon" or by use of "force likely to produce great bodily injury," presents an *objectively obvious* risk of *substantial* harm, the BIA reasonably concluded that there is no meaningful distinction between (1) someone who is subjectively aware of the facts that create that obvious risk versus (2) someone who is subjectively aware of that risk. At least where the underlying conduct involves such aggravating factors, subjective awareness of the relevant facts coupled with an objectively unreasonable disregard of the risk that is obviously inherent in those facts can properly be thought to involve a significant degree of culpability.  In short, the BIA permissibly concluded that both categories of offenders have engaged in sufficiently "'reprehensible conduct'" with a sufficiently "'culpable mental state.'" *Silva v. Barr*, 965 F.3d 724, 731 (9th Cir. 2020) (citation omitted).

Safaryan urges us to reject *Matter of Wu* on the grounds that, in the absence of a specific "intent to harm or injure," an assault offense *cannot* be one that involves moral turpitude.  In support of this contention, Safaryan relies on *Uppal v. Holder*, 605 F.3d 712 (9th Cir. 2010), in which we

held that a particular Canadian aggravated assault offense did not qualify as a crime involving moral turpitude. But contrary to what Safaryan contends, *Uppal* did not hold that specific intent is a minimum prerequisite for finding that a particular assault offense involves moral turpitude. *Uppal* instead noted that the Canadian offense's mens rea combined "the base-level mens rea required for simple assault" with an additional element that we concluded amounted to "a *negligence* standard." 605 F.3d at 716 (emphasis added). In addition, the Canadian offense lacked the sort of "aggravating dimensions" that had been "recognized as sufficiently increasing the culpability of an assault," such as "the use of a deadly weapon." *Id.* at 717 (citing *Matter of Medina*, 15 I. & N. Dec. 611). Neither of these observations applies to § 245(a)(1). Moreover, nothing in *Uppal* supports Safaryan's view that, in rejecting a negligence standard as inadequate, we thereby established a minimum mens rea of *specific intent*. Indeed, Safaryan's view cannot be squared with our favorable citation of *Matter of Medina* in both *Uppal* and *Ceron*. *See Uppal*, 605 F.3d at 717; *Ceron*, 747 F.3d at 784. As we explained in *Ceron*, the Illinois assault-with-a-deadly-weapon statute at issue in *Matter of Medina* "permitted a conviction with only a 'recklessness' mental state." 747 F.3d at 784; *see also Leal v. Holder*, 771 F.3d 1140, 1148 (9th Cir. 2014) (explaining that, under *Uppal*, recklessness is an adequate mens rea for assault if combined with additional aggravating factors).

**b**

Second, *Matter of Wu* noted that the prior version of § 245(a)(1) differed from the Illinois statute at issue in *Matter of Medina* in that the former applied, not just to an assault with a deadly weapon, but also to an assault with force likely to produce great bodily injury. 27 I. & N. Dec.

at 11–12.  The BIA concluded that this distinction did not warrant a different conclusion either, because *both* specified methods for carrying out an assault "involve[d] an aggravating factor that renders such an offense reprehensible."  *Id*. at 15.  We conclude that the BIA's analysis on this score is likewise reasonable.

As the BIA explained, the reason why the "use of a deadly or dangerous weapon or instrument" has been treated as a significant aggravating factor in assessing moral turpitude is that it "magnifies the danger posed by the perpetrator and demonstrates his or her heightened propensity for violence and indifference to human life." *Matter of Wu*, 27 I. & N. Dec. at 11; *see also Altayar*, 947 F.3d at 552 (an assault with a deadly weapon, or with a dangerous instrument "'readily capable of causing death or serious physical injury,' necessarily makes the offense more serious, more dangerous, and therefore more blameworthy than a simple assault" (citation omitted)).  That same rationale applies to the use of force likely to produce great bodily injury, which is likewise "more serious, more dangerous, and therefore more blameworthy than a simple assault." *Altayar*, 947 F.3d at 552.  Indeed, as the BIA correctly noted, § 245(a)(1) requires a finding that the defendant's conduct "had the capability and probability of inflicting great bodily injury under *either* a 'deadly weapon' theory or a 'force likely' theory." *Matter of Wu*, 27 I. & N. Dec. at 15 (quoting *Aguilar*, 945 P.2d at 1213 (emphasis added)); *see also Aguilar*, 945 P.2d at 1212 (noting this "fundamental identity of the concepts of assault with a deadly weapon and assault by means of force likely to produce great bodily injury").  The BIA thus reasonably concluded that either aggravator is sufficient to establish moral turpitude, at least where (as in § 245(a)(1)) the offender acts "while being aware of the facts that make it

likely that such conduct will cause, at a minimum, great bodily injury to another person." *Matter of Wu*, 27 I. & N. Dec. at 15.

*       *       *

Because the BIA's decision in *Matter of Wu* correctly framed the legal issues and reached a reasonable conclusion in addressing the issues we identified in *Ceron*, we conclude that the decision is entitled to *Chevron* deference. We therefore hold that the BIA correctly determined that Safaryan's conviction under § 245(a)(1) was for a crime involving moral turpitude and that he was therefore inadmissible under the INA.

## III

Safaryan also contends that, even if his conviction renders him inadmissible, the BIA erred in upholding the IJ's denial of a waiver of inadmissibility under § 212(h) of the INA, 8 U.S.C. § 1182(h). In denying a waiver, the IJ held that, because Safaryan's conviction under § 245(a)(1) constituted a "violent or dangerous crime[]," he had to "clearly demonstrate[]" that denial of a waiver would result in "exceptional and extremely unusual hardship," 8 C.F.R. § 1212.7(d), and that Safaryan failed to show such hardship. The BIA upheld both aspects of the IJ's reasoning and affirmed the denial of a waiver. Although Safaryan challenges these rulings in this court, we lack jurisdiction to consider them.

Section 242(a)(2)(B)(i) of the INA eliminates our jurisdiction to review discretionary decisions concerning cancellation of removal "unless the petition raises a cognizable legal or constitutional question concerning that determination." *Fernandez v. Gonzales*, 439 F.3d 592, 596

(9th Cir. 2006) (citing 8 U.S.C. § 1252(a)(2)(B)(i)). Safaryan asserts that this exception applies because he "claims violation of his due process rights." But beyond that unadorned statement, Safaryan never alleges, much less substantiates, any specific due process violation in his appellate brief, and we may not "'manufacture'" an argument for him. *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)). Rather, his brief only challenges (1) the agency's conclusion that § 245(a)(1) is a violent crime that, under 8 C.F.R. § 1212.7(d), required him to carry a heavier burden to obtain a waiver; and (2) the agency's weighing of the circumstances in determining that the heightened standard was not met. But we have expressly held that the jurisdictional bar of § 242(a)(2)(B)(i) extends to "the BIA's discretionary decision to view [an alien's] crime as a violent or dangerous one," *Torres-Valdivias v. Lynch*, 786 F.3d 1147, 1152–53 (9th Cir. 2015), and we similarly lack jurisdiction to review the agency's discretionary weighing of the equities in Safaryan's case, *see Fernandez*, 439 F.3d at 596.

Accordingly, we **DENY** Safaryan's petition for review.